CHARLES C. MACHUREK, APPELLEE, V. OHIO NATIONAL LIFE INSURANCE COMPANY, APPELLANT.

FILED JUNE 9, 1933. No. 28538.

*Brown, Fitch & West,* for appellant.

*Baker, Lower & Sheehan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

This is an action to recover disability insurance in the sum of $2,100 with interest. The American Old Line Insurance Company issued to Charles C. Machurek, plaintiff, a 15,000-dollar life insurance policy May 16, 1927. The annual premium was $489.75. Attached to the policy, when issued, was a supplemental agreement providing for proof of disability and for the payment of a monthly income of one per cent. of the face of the policy each calendar month during the continuance of disability, if the

insured, by reason of accident or disease, "has become wholly disabled by bodily injuries or disease," so that he is and "will be, presumably, thereby permanently, continuously, and wholly prevented from engaging in any occupation or employment whatsoever for remuneration or profit, or performing any work, and that such disability has then existed for not less than ninety days." The annual premium for the supplemental agreement was $55.20 which was included in the premium stated in the policy. When the policy and supplemental agreement were in force July 12, 1930, a shotgun was accidentally discharged by plaintiff, causing the loss of his left hand and a portion of his left arm. Plaintiff pleaded that, as a result of the accident and injury, he was "wholly disabled and was permanently, continuously, and wholly prevented from engaging in any occupation or employment whatsoever for remuneration or profit, and from performing any work;" that such disability continued for more than 90 days from the date of said injury to the date of filing his petition—October 13, 1931; that the proof and notice required by the insurance contract were given. Plaintiff sued for the unpaid monthly income of 1 per cent. of the face of the policy during disability, or for $2,100 and interest.

The Ohio National Life Insurance Company, defendant, acquired the business of the American Old Line Insurance Company and became liable for compliance with plaintiff's policy and with the supplemental agreement for disability insurance.

The answer to the petition admitted the issuance of the policy and the making of the supplemental agreement and that defendant assumed the obligations thereof. Otherwise there was a general denial and a plea of settlement of plaintiff's claim December 15, 1930, under which defendant paid and plaintiff accepted $750. All allegations inconsistent with the petition were denied in a reply to the answer. Upon a verdict in favor of plaintiff for $2,411.65, including interest, judgment was rendered. Defendant appealed.

On appeal it was argued at considerable length that the district court erred in overruling a motion by defendant to direct a verdict in its favor after all the evidence had been adduced on both sides. This assigned error is based on the propositions that plaintiff was not permanently disabled, within the meaning of the policy, and that there was no plea or evidence that, when proofs of a claim were made, he or his physician presumed, or had any reason to believe, the disability resulting from the gunshot was permanent. The solution of these problems depends on the risk assumed and the evidence.

By virtue of the supplemental agreement and the annual payments of $55.20 in premiums, plaintiff had some kind of accident and disability insurance. Defendant's liability was that of the original insurer. The policy and the supplemental agreement were in force when the accident occurred. As a result of the gunshot plaintiff was totally disabled for 12 or 14 months. Due notice of the accident and disability and proofs of the claim were given. These facts are shown by the evidence and are conceded by defendant. Did the insurer assume the risk of this total disability for 12 or 14 months? What disability insurance, if any, did plaintiff purchase with his annual premiums of $55.20 in connection with the 15,000-dollar policy? The supplemental agreement contains such terms as "a monthly income of one per cent. of the face of the policy each calendar month during the continuance of such disability;" "wholly disabled by bodily injuries or disease," so that he "will be, presumably, thereby permanently, continuously, and wholly prevented from engaging in any occupation or employment whatsoever for remuneration or profit, or performing any work, and that such disability has then existed for not less than ninety days." These terms, in the connection used, are ambiguous, if not inconsistent in some respects. Plaintiff was not a lawyer, insurance agent or underwriter. He was engaged in the automobile business and was approached at his garage by an authorized agent who procured the life in-

surance policy and also the supplemental agreement for accident and disability insurance in controversy. At the time, he naturally asked the agent about the perplexing language in the supplemental agreement. The identical agent was a witness at the trial and, referring to plaintiff, in answering questions, testified:

"Mr. Machurek asked me about the total and permanent disability clause, and asked me if he was laid up if he would receive compensation, and I told him that in the policy it stated that, if he was disabled for ninety days, that he would receive compensation the same as the rest of them received it; if he was disabled for a period of ninety days, and would receive $150 a month until he was well again. * * * I told him that if he was disabled for life that he would receive $150 a month as long as he lived."

This and other testimony of a similar import were not disputed. Objections were interposed on the grounds that such evidence contradicted or varied the written instrument and was inadmissible; that without it there was no evidence of a claim for which defendant incurred liability under the insurance contract. Insurers, by inserting in their policies misleading, uncertain, ambiguous or inconsistent terms and by construing them in their own favor, cannot always force the insured into a court of equity to establish the contract actually made or forfeit the insurance. In determining rights and liabilities under an ambiguous insurance contract drafted by the insurer, parol testimony, when justified by the circumstances, may be admitted to throw light on the terms upon which the minds of the contracting parties met. To prevent a wrong and to do justice, extrinsic evidence may be admitted to show the mutual understanding of the parties to a life insurance contract, when executed, as to the meaning of ambiguous terms to which they subscribed. These rules of evidence, when restricted to a particular infirmity in language inserted by an insurer in a printed form, are sanctioned by both reason and authority and are occasion-

ally essential to the administration of justice. Ambiguous language in a contract for disability insurance, if open to different interpretations, may be construed against the insurer that drafted the instrument. The blank form of the supplemental agreement for accident and disability insurance was put into the hands of an authorized agent of the insurer with power to solicit insurance risks under it. He acted for the insurer. It may fairly be inferred from the writings and from other competent evidence that the parties to the contract, when executed, mutually understood the ambiguous provisions to mean that insured, if totally disabled for more than 90 days, would be entitled to $150 a month during such disability, and that defendant procured the risk and received the premium on those terms. There is nothing to show that the annual premium of $55.20 which plaintiff paid was not adequate compensation for the insurance risk of $150 a month during total disability. In these views of the law and the testimony, there does not seem to be a reversible error in the order overruling the motion to direct a verdict in favor of defendant or a sufficient reason to set aside the judgment for assigned errors in instructions and in rulings on evidence.

The issue raised by the defense of settlement was submitted to the jury and by them determined in favor of plaintiff. Agents and officers of insurer met plaintiff in a bank in David City, where they remained in conference for two hours. Witnesses testified to facts tending to prove that an agreement to settle the controversy for $750 was made. After the meeting insurer mailed to plaintiff a 750-dollar check, dated December 12, 1930, which he received and cashed. Insurer did not offer any documentary evidence of a settlement. The check itself did not mention payment in full or recite the settlement of the claim. Plaintiff denied that he agreed to a settlement and testified to the effect that the check was given in appreciation of services rendered by him to insurer in assisting its agents in the procuring of business. On this

feature of the defense, the evidence seems to be sufficient to support a finding that plaintiff did not agree to the settlement pleaded; but it does not follow that he was entitled to recover the full amount of his claim for insurance and at the same time retain the $750. If this item was not paid to settle the claim for insurance, it was a payment thereon. Plaintiff testified in substance that the check was given and received for services and influence on behalf of insurer in procuring business, but his own testimony shows that he had not been employed as an agent. He admitted he did not have a contract of employment. The evidence is insufficient to support a valid claim for compensation in addition to disability insurance. The law seems to require the premium or consideration for insurance to be designated in the policy. The commission of an agent for procuring a risk is customarily paid from the premium shown on the face of the contract. A statute provides:

"It shall be unlawful for any insurance company, association or society, or for any officer, manager, agent or other representative thereof, to include in the sum charged or designated in any policy as the consideration for insurance, any fee, compensation, charge or perquisite whatsoever not specified in the policy. When collected the same shall be reported as such." Comp. St. 1929, sec. 44-339.

Insurance corporations, stockholders and policyholders are entitled to lawful disbursements of insurance funds arising from premiums and other legitimate sources of corporate income. Insurance corporations and their officers are not at liberty to apply insurance funds to unauthorized compensation of agents or others for services. Otherwise, funds created to pay insurance risks, legitimate expenses and corporate profits could be squandered on void claims for compensation. Premiums and other insurance funds are collected and held for proper purposes of the insurance business.

Plaintiff seems to have made a case for disability in-

surance, but he did not prove facts showing a lawful right to retain the $750 paid by the insurer, except as a payment on his claim. Defendant is entitled to a credit of $750 with interest at the rate of 7 per cent. per annum from the time the payment was made, December 15, 1930, until the date of the judgment, March 22, 1932, or for $816.80 in all. The judgment for $2,-411.65 will be affirmed to the extent of $1,594.85, if a remittitur of $816.80 is filed herein within 20 days. Otherwise, it will be reversed and the cause remanded for further proceedings.

AFFIRMED ON CONDITION.