[L.A. No. 30082. In Bank. June 11, 1973.]

JEROME GRUENBERG, Plaintiff and Appellant, v.
AETNA INSURANCE COMPANY et al., Defendants and Respondents.

568

## COUNSEL

Hirsch, Marcus & Wechsler and Alvin Hirsch for Plaintiff and Appellant.

Wagner & Scuderi, Robert S. Scuderi, Robert E. Cartwright, Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett, Herbert Hafif, David Daar, Leonard Sacks and Sanford M. Gage as Amici Curiae on behalf of Plaintiff and Appellant.

Cummins, White & Breidenbach, James O. White, William F. Rylaarsdam, Anthony E. Shafton, Jarrett & Woodhead, A. P. G. Steffes, Frank W. Woodhead, Chase, Rotchford, Drukker & Bogust, William C. Falkenhainer, Lawrence O. de Coster and David Clark for Defendants and Respondents.

## OPINION

**SULLIVAN, J.**—Plaintiff appeals from a judgment of dismissal entered upon an order sustaining, with leave to amend, defendants' general demurrers to plaintiff's complaint, plaintiff having thereafter declined to amend.[1]

---

[1]Defendants are the following: (a) Three insurance companies: Aetna Insurance Company, Yosemite Insurance Company and American Home Assurance Company; (b) P. E. Brown and Company, a corporation engaged in the business of investigating

Plaintiff's complaint, containing only one count, alleged in substance the following: On and after April 7, 1969, plaintiff was the owner of a cocktail lounge and restaurant business in Los Angeles known as the Brass Rail. The business premises were insured against fire loss in the aggregate sum of $35,000 by the three defendant insurers, Aetna Insurance Company (Aetna), Yosemite Insurance Company (Yosemite), and American Home Assurance Company (American).

In the early hours of the morning of November 9, 1969, a fire occurred at the Brass Rail. Plaintiff was notified and immediately went to the scene. While there, he became involved in an argument with a member of the arson detail of the Los Angeles Fire Department and was placed under arrest.

On November 10, 1969, defendant insurers, upon being informed of the fire, engaged the services of defendant P. E. Brown and Company (Brown). Carl Busching, a claims adjuster employed by Brown, went to the Brass Rail to investigate the fire and inspect the premises. While he was there, he stated to an arson investigator of the Los Angeles Fire Department that plaintiff had excessive coverage under his fire insurance policies. Eventually the premises were locked and nothing was removed until November 14, 1969, when Busching authorized the removal of the rubble and debris.

About November 13, 1969, plaintiff was charged in a felony complaint with the crimes of arson (Pen. Code, § 448a) and defrauding an insurer (Pen. Code, § 548). A preliminary hearing was set for January 12, 1970.

Defendant insurance companies also retained defendant law firm Cummins, White, Briedenbach & Alphson (Cummins) to represent them in the matter of plaintiff's claim of fire loss. On November 25, 1969, defendant Donald Ricketts, an attorney-employee of Cummins, demanded in writing that plaintiff appear at the offices of said firm on December 12, 1969, to submit to an examination under oath and to produce certain documents.[2] On November 26, 1969, plaintiff's attorney responded by

---

and adjusting insurance claims for insurance companies and Carl H. Busching its staff adjuster; and (c) Cummins, White, Breidenbach and Alphson, a copartnership engaged in the practice of law, attorneys for the insurance companies designated in (a) and Donald W. Ricketts, an attorney-employee of such law firm.

[2]The demand for an examination and the production of documents was made under certain provision in the policies required by Insurance Code section 2070. The subject provisions, commonly referred to as a "cooperation and notice" clause, are contained in Insurance Code section 2071, which state in pertinent part: (Under paragraph entitled "Requirement in case loss occurs") "The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains

letter to Ricketts explaining that he had advised plaintiff not to make any statements concerning the fire loss while criminal charges were pending. The letter also requested that the insurers waive the requirement of an examination until the criminal charges lodged against plaintiff were concluded. Ricketts refused the request and warned that failure to appear for the examination would void coverage under the policies. On December 16, 1969, Ricketts, on behalf of the Cummins law firm, advised plaintiff's attorney in writing that defendant insurers were denying liability under the policies because of plaintiff's failure to submit to an examination under oath and to produce documents.

On January 12, 1970, a preliminary hearing was held on the complaint charging plaintiff with arson and defrauding an insurer. Busching appeared as a witness for the prosecution and restated his belief that plaintiff had excessive fire insurance coverage for his business. The charges were dismissed by the magistrate for lack of probable cause.

On January 26, 1970, plaintiff's attorney advised defendant insurers that plaintiff was now prepared to submit himself for an examination. However, the insurers reaffirmed their position that they were denying liability because of plaintiff's failure to appear.

According to the allegations of the complaint, all defendants other than the insurance company defendants were the agents and employees of the three defendant companies and were acting within the scope of such agency and employment when the acts attributed to them were committed. It was further alleged that "the defendants and each of them joined together and acted in concert to falsely imply that the plaintiff had a motive to deliberately set fire to and burn down his place of business [and that] [t]he purpose of the defendants in creating such false implication was to establish a grounds [sic] upon which the defendant Insurers could avoid paying the amounts due to plaintiff under the policies of insurance issued by the defendant Insurers." To carry out their purpose, defendants "conducted themselves in the following manner": (a) defendant Busching stated to an arson investigator that plaintiff had acquired excessive fire insurance coverage; (b) defendant insurers demanded that plaintiff submit to an examination under oath and to produce certain documents "in order to enable them

---

of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, . . ."; (Under paragraph entitled "Suit") "No suit or action on this policy for the recovery of any claim shall be sustainable . . . unless all the requirements of this policy shall have been complied with, . . . ."

to secure further evidence to support the false implication that plaintiff was guilty of arson"; and (c) defendant Busching, appearing as a witness for the People at the preliminary hearing on the felony complaint, reaffirmed his statement made to the arson investigator.

As a "direct and proximate result of the outrageous conduct and bad faith of the defendants," plaintiff suffered "severe economic damage," "severe emotional upset and distress," loss of earnings and various special damages. Plaintiff sought both compensatory and punitive damages.

Defendants filed general demurrers to the complaint which were sustained with leave to amend.[3] Plaintiff elected to stand on his complaint and an order of dismissal was entered. This appeal followed.

We proceed to examine the complaint for its legal sufficiency according to the familiar well settled principles. ■ "A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]" (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) ■ "In determining whether or not the complaint is sufficient, as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." (*Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436].) In other words, "plaintiff need only plead facts showing that he may be entitled to some relief [citation]." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint. (*Id.* at p. 496.)[4]

---

[3]The trial court stated that its ruling was made on the basis of the holding in *Hickman* v. *London Assurance Corp.* (1920) 184 Cal. 524 [195 P. 45, 18 A.L.R. 742]. There the insured suffered a fire loss and he refused to appear for an examination under oath, even though required by the policy, because of a pending criminal charge of arson. When the insurer denied liability the insured brought an action on the policy to recover his loss. This court, rejecting the insured's claim of self-incrimination privilege, held that the insured's failure to appear for an examination, in contravention of the terms of the policy, prevented recovery.

[4]We also observe that although "[i]n the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties" (Code Civ. Proc., § 452; *Buxbom* v. *Smith*

Plaintiff contends that he has stated sufficient facts to constitute a cause of action in tort against defendants for breach of an implied duty of good faith and fair dealing. The duty of an insurer to deal fairly and in good faith with its insured is governed by our decisions in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], and *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]. We explained that this duty, the breach of which sounds in both contract and tort, is imposed because "[t]here is an implied covenant of good faith and fair dealing in every contract [including insurance policies] that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Comunale, supra,* at p. 658.) Therefore, "an insurer . . . who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits." (*Id.* at p. 661.)

Thus in *Comunale* and *Crisci* we made it clear that "[l]iability is imposed [on the insurer] not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing." (*Crisci, supra,* at p. 430.) In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a "duty to accept reasonable settlements"; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement man-

---

(1944) 23 Cal.2d 535, 542 [145 P.2d 305]), the courts have recognized an exception to this rule where the plaintiff, after an opportunity to amend, fails to remove the defect. (See 3 Witkin, Cal. Procedure (2d ed. 1971) §§ 336-337, pp. 2004-2006.) In such event, it has been said that "[s]ubstantial justice requires that the essential facts appear at least by necessary implication from the allegations set forth" (*Risco* v. *Reuss* (1941) 45 Cal.App.2d 243, 245 [113 P.2d 914]), and that it must be assumed that the plaintiff "has stated as strong a case as he can." (*Vaughn* v. *Certified Life Ins. Co.* (1965) 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].) The comment has been made that these and similar decisions "will usually be found to involve the following: (1) a defective complaint; (2) the defect pointed out by demurrer; (3) demurrer sustained with leave to amend; (4) plaintiff unwilling or unable to remove the defect. These cases establish the rule that, on an appeal by the plaintiff, the complaint will be construed against him." (3 Witkin, *op cit. supra,* § 337, p. 2005.) Whatever may be the general applicability of the foregoing exception, we note that in the instant case the trial court did point out what it considered the particular defect in the pleading to be since it stated that it sustained the demurrers "solely under the compulsion of *Hickman* v. *London Assurance Corp.*" (See fn. 3, *ante.*) Our review of the sufficiency of the complaint will be made in the light of this statement.

dated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

Thus, in *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal. App.3d 232, 239 [102 Cal.Rptr. 547], where the insurer refused to indemnify its insured for a loss covered by the uninsured motorist provision of an automobile liability policy, the court had this to say: "In every insurance policy there is implied by law a covenant of good faith and fair dealing. (See *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 658 . . . ; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 401 . . . .) This implied obligation requires an insurer to deal in good faith and fairly with its insured in handling an insured's claim against it. Here, Employers deliberately, willfully and in bad faith withheld payment of the Richardson claim months after it knew the claim to be completely valid; it forced an arbitration hearing on a claim against which it already knew that it had no defense; even after the award was made, it instructed its local office to attempt 'to make the best possible settlement,' and forced plaintiffs to resort to litigation to have the award judicially confirmed. This conduct toward its own insured was unconscionable, and constituted a tortious breach of contract. (See *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 663; *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425, 432-433 . . . .) The duty violated—that of dealing fairly and in good faith with the other party to a contract of insurance—is a duty imposed by law, not one arising from the terms of the contract itself. In other words, this duty of dealing fairly and in good faith is nonconsensual in origin rather than consensual. Breach of this duty is a tort. [Citations.]"

In *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286], an insurer was held liable in tort for damages caused by the insurer's refusal to indemnify its insured under a disability policy. Although the action was brought on the theory of intentional infliction of emotional distress, the court explained (pp. 401-402) that the insurer's conduct might also be viewed as a violation of its implied obligation of good faith and fair dealing. The insurer, refusing to pay its insured under the *injury* provision of the policy which set forth a maximum liability period of 30 years, insisted on payment under the *sickness* provision of the policy, having a two-year maximum

period, even though its own investigation established that plaintiff's disability was caused by injury. It sought to avoid liability under the policy, at first by claiming that the insured had made a material misrepresentation in the application for insurance and later by urging the insured to agree to a settlement for an amount far less than the insurer's potential liability. In response the *Fletcher* court observed: "An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. (*Crisci* v. *Security Ins. Co., supra,* at p. 429.) Included within this duty in the case of a liability insurance policy is the duty to act reasonably and in good faith to settle claims against the insured by a third person. (*Crisci* v. *Security Ins. Co., supra.*) The violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract. (*Crisci* v. *Security Ins. Co., supra,* at pp. 432-434 . . . .) We think that, similarly, the implied-in-law duty of good faith and fair dealing imposes upon a disability insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy. We think that, as in *Crisci,* the violation of that duty sounds in tort notwithstanding that it also constitutes a breach of contract. [Citation.]" (*Id.* at p. 401.)

■ It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

■ In the case at bench plaintiff has alleged in essence that defendants wilfully and maliciously entered into a scheme to deprive him of the benefits of the fire policies in that they encouraged criminal charges by falsely implying that he had a motive to commit arson, and in that, knowing plaintiff would not appear for an examination during the pendency of criminal charges against him, they used his failure to appear as a pretense for denying liability under the policies. We conclude therefore that while the complaint is far from a model pleading, it does allege in substance a breach on the part of defendant insurance companies of their duty of good faith and fair dealing which they owed plaintiff.[5] We emphasize that

[5]We reject defendants' argument that a cause of action is not stated because the separate acts of the non-insurer defendants may be privileged in various respects. For example, they contend that Busching's testimony at plaintiff's preliminary hearing, as

we are passing only upon the sufficiency of these allegations which of course must be sustained by proper proof.

■ With regard to the defendants other than the three insurance companies, we reach a different result. Plaintiff alleges that Brown, the insurance adjusting firm, and its employee, Busching, and Cummins, the law firm, and its employee, Ricketts, were the agents and employees of defendant insurers and of each other and were acting within the scope of that agency and employment when they committed the acts attributed to them. However, plaintiff contends that these non-insurer defendants breached only the duty of good faith and fair dealing; therefore, we need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the contracts of insurance. Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72 [35 Cal.Rptr. 652].) This rule, as was explained in *Wise* (at pp. 72-73) "derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged." (See also *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390, 393 [6 Cal.Rptr. 171].) Accordingly, the judgment of dismissal in favor of the non-insurer defendants must be affirmed.

■ Defendant insurance companies contend that plaintiff's failure to appear at their attorneys' office in order to submit to an examination under oath and to produce certain documents is a bar to the action since (1) the clause in the contracts requiring the insured to appear is a condition precedent to legal action[6] (see fn. 2, *ante*) and that plaintiff must allege that he

---

part of a judicial proceeding, is absolutely privileged (see Civ. Code, § 47, subd. 2; Rest., Torts, § 587), and that the conduct of defendant law firm and its employee Ricketts is given the cloak of immunity under Civil Code section 47. However, even if these privileges apply to the separate acts of the insurers' alleged agents, the defendant insurers may not benefit from them, because their alleged scheme to avoid liability under the policies, in breach of an implied duty of good faith and fair dealing, transcends the individual acts of their agents. Consequently, defendant insurers cannot be heard to say that they are privileged to act in bad faith and deal unfairly with their insured.

[6]Defendants cite *Hickman* v. *London Assurance Corp., supra,* 184 Cal. 524, 532-533; *Robinson* v. *National Auto. etc. Ins. Co.* (1955) 132 Cal.App.2d 709 [282 P.2d 930]; *Bergeron* v. *Employers' Fire Ins. Co.* (1931) 115 Cal.App. 672, 675 [2 P.2d

has complied with it; (2) the allegations in plaintiff's complaint demonstrate that he has failed to comply with the "cooperation and notice" clause; (3) the demand for appearance was adequate; and (4) even if the demand for appearance were defective, plaintiff may not complain of it for the first time on appeal (see *Restina* v. *Aetna Casualty & Surety Company, supra,* 306 N.Y.S.2d 219, 222).[7]

Plaintiff responds that his failure to appear at the requested time is of no consequence for the following reasons: (1) the insurers must show, by way of defense, that his failure to appear substantially prejudiced their investigation of his claim;[8] (2) although plaintiff failed to appear on December 12, 1969, he complied with the provisions of the policy requiring his appearance (see fn. 2, *ante*); and (3) the demand to appear on December 12, 1969, was insufficient in that defendants failed to specify the person who would conduct the examination.

All parties appear to assume that plaintiff's contractual duty is a dependent condition (whether precedent or subsequent) to defendants' covenant of good faith and fair dealing. In other words, the underlying premise of their arguments is that if plaintiff's failure to appear on December 12, 1969, constituted a breach of plaintiff's obligation under the policies, then defendants' duty of good faith and fair dealing was excused. We do not think, however, that the controlling issue here is the nature of *plaintiff's* duty, i.e., whether his dependent duty is precedent or subsequent; rather, the crucial issue is the nature of *defendants'* duty, i.e., whether their duty of good faith and fair dealing is absolute or conditional. Therefore, we need not consider the aforementioned contentions of the parties.

Defendants' duty, as we have explained, arises from a contractual relationship existing between the parties. This duty has been characterized as an "implied covenant" that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement."

___

453]; and *Restina* v. *Aetna Casualty & Surety Company* (1969) 61 Misc.2d 574 [306 N.Y.S.2d 219].

[7]Defendants also contend that plaintiff may not invoke the privilege of self-incrimination as an excuse for his failure to appear (*Hickman* v. *London Assurance Corp., supra,* 184 Cal. 524, 532). Plaintiff, however, does not contend that this privilege justifies his failure to attend the examination.

[8]Plaintiff cites *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 737 [79 Cal.Rptr. 326, 456 P.2d 982]; *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303, 306 [32 Cal.Rptr. 827, 384 P.2d 155]; *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 141 [85 Cal.Rptr. 693]. These cases hold that an insurer may not rely on the insured's violation of a "cooperation and notice" clause, at least as to third parties, unless the insurer can prove that it was substantially prejudiced thereby.

(*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658.) While it might be argued that defendants would be excused from their contractual duties (e.g., obligation to indemnify) if plaintiff breached his obligations under the policies, we do not think that plaintiff's alleged breach excuses defendants from their duty, implied by law, of good faith and fair dealing. In other words, the insurer's duty is unconditional and independent of the performance of plaintiff's contractual obligations.[9]

We think that the opinion of this court in *Jones* v. *Kelly* (1929) 208 Cal. 215 [280 P. 942] is instructive on this point. In that case plaintiffs sued their landlord in tort after the landlord had wilfully and maliciously cut off the water supply to the dwelling leased by him. This court stated, at page 255, "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' [Citation.] This duty is *independent* of the contract and attaches over and above the terms of the contract. . . . A tort may grow out of or make a part of, or be coincident with a contract. The fact that there existed a contract between the plaintiffs and the defendant would not immune the latter from the penalty that is ordinarily visited upon tortfeasors." (Italics added.) Similarly, in the instant case, the existence of a contractual relationship does not insulate defendant insurers from liability that is "ordinarily visited upon tortfeasors" for interfering with a property interest of the insured in receiving the benefits of the agreement. Therefore, even though the duty allegedly assumed by defendant insurers arises from an existing contractual relationship, this duty is independent of the performance of plaintiff's contractual obligations.

We conclude, therefore, that the duty of good faith and fair dealing on the part of defendant insurance companies is an absolute one. At the same time, we do not say that the parties cannot define, by the terms of the contract, their respective obligations and duties. We say merely that no matter how those duties are stated, the nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded.

█ Finally we take up defendants' contention that plaintiff may not

---

[9]Even if defendants' duty were construed as a *dependent* condition, i.e., dependent on plaintiff's performance of his obligations under the policies, we think that plaintiff's failure to appear would still not be fatal to his cause of action. That is, the allegations of the complaint demonstrate that plaintiff's failure to appear was induced by defendants' conduct, in breach of their duty of good faith and fair dealing. Therefore, plaintiff's obligation to appear may be seen as excused by defendants' alleged breach. (See 3 Witkin, *op. cit. supra,* § 406, pp. 2063-2064.)

recover for emotional distress, as a matter of law, because plaintiff failed to allege conduct which is "extreme" and "outrageous." (See *Richardson* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d 232, 241.) To put it another way, defendants take the position that the essential elements of a cause of action for the independent tort of the intentional infliction of emotional distress must be engrafted on a cause of action against an insurer for breach of its duty of good faith and fair dealing. Plaintiff responds that he need not allege outrageous conduct; and in the alternative, that if outrageous conduct is required, then it cannot be said as a matter of law that the conduct alleged in the complaint is not outrageous.

We upheld recovery for "mental suffering" in *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, since an action against an insurer for breach of its implied duty of good faith sounds in tort as well as contract. We explained there (p. 433): "The general rule of damages in tort is that the injured party may recover for all detriment caused whether it could have been anticipated or not. (Civ. Code, § 3333 . . . .) In accordance with the general rule, it is settled in this state that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of . . . . The commonest example of the award of damages for mental suffering in addition to other damages is probably where the plaintiff suffers personal injuries in addition to mental distress as a result of either negligent or intentional misconduct by the defendant. [Citations.] Such awards are not confined to cases where the mental suffering award was in addition to an award for personal injuries; damages for mental distress have also been awarded in cases where the tortious conduct was an interference with property rights without any personal injuries apart from the mental distress. [Citations.]" We concluded with the following (pp. 433-434): "We are satisfied that a plaintiff who as a result of a defendant's tortious conduct *loses his property* and *suffers mental distress* may recover not only for pecuniary loss but also for his mental distress." (Italics added.)

In *Crisci* we did not suggest that to warrant recovery for mental distress the conduct of the insured must be "outrageous" or that the mental distress must be "severe." We explained that "[t]he principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.] Obviously, where . . . the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced . . . ." (*Id.* at p. 434.)

Our decision in *Crisci* is consistent with section 46, Restatement Second

of Torts, on which defendants mistakenly rely. It states in part: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Comment "a" to that section states that it is intended to apply only to the independent tort of intentional infliction of emotional distress. To be distinguished, comment "b" explains, are those cases in which "emotional distress may be an element of damages . . . where other interests have been invaded, and tort liability has arisen apart from the emotional distress." The more exacting requirements of section 46 are applied, the same comment states, to the independent tort (i.e., intentional infliction of emotional distress) "[b]ecause of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability . . . ." Since in the instant case we are concerned with mental distress resulting from a substantial invasion of property interests of the insured and not with the independent tort of intentional infliction of emotional distress, we deem section 46 to be inapplicable.

Here, plaintiff alleged that he suffered substantial economic losses apart from mental distress. He alleged that he suffered loss of earnings; that he was compelled to go out of business and that as a result he was unable to pay his business creditors; that he incurred the costs of defending lawsuits brought against him by his creditors; and that he incurred medical expenses. We conclude, therefore, that since plaintiff has alleged substantial damages for loss of property apart from damages for mental distress, the complaint is sufficiently pleaded with respect to the latter element of damages.

Contrary to defendant's position, *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, does not express a different rule. In *Fletcher,* plaintiff's theory of recovery expressed in his complaint, as previously explained, was predicated on the tort of intentional infliction of emotional distress alone. Quite naturally, therefore, the court concluded that severe emotional distress is a requisite element of recovery. However, the mere fact that the action there involved the liability of an insurer for its tortious conduct, measured by the elements the intentional infliction of emotional distress, does not mean that those same elements must be applied where, as in the instant case, recovery is sought on a totally distinct theory.[10]

---

[10]In *Richardson* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d 232, involving an insurer's breach of duty of good faith and fair dealing, the court, in reversing the judgment for plaintiff and remanding for a new trial solely on the issue of damages, declared that "[t]o support an award of damages for anxiety and emotional

In summary, we conclude that plaintiff has stated facts sufficient to constitute a cause of action in tort against defendant insurance companies for breach of their implied duty of good faith and fair dealing; that plaintiff's failure to appear at the office of the insurers' counsel in order to submit to an examination under oath and to produce certain documents, as appearing from the allegations of the complaint, is not fatal to the statement of such cause of action; and that plaintiff has stated facts sufficient for the recovery of damages for mental distress whether or not these facts constitute "extreme" or "outrageous" conduct. On the other hand, since the remaining defendants were not subject to the implied duty arising from the contractual relationship, we conclude that the complaint does not state sufficient facts to constitute a cause of action against them and that the judgment of dismissal in their favor was proper.

As to defendants Aetna Insurance Company, Yosemite Insurance Company and American Home Assurance Company, the judgment is reversed and the cause is remanded to the trial court with directions to overrule the demurrers and to allow said defendants a reasonable time within which to answer. As to the remaining defendants, the judgment is affirmed. Plaintiff shall recover his costs on appeal from defendants, Aetna Insurance Company, Yosemite Insurance Company, and American Home Assurance Company; the other defendants shall recover their costs on appeal from plaintiff.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**ROTH, J.**\*—I dissent.

This dissent does not deny that lack of good faith and fair dealing by an insurer in disposition of a contractual obligation exposes it to tort liability. It purports only to show that at bench no action in tort is stated aided by that doctrine as originally enunciated, or as it is currently expanded. In fact, unless *Hickman* v. *London Assurance Corp.,* 184 Cal. 524 [195 P. 45, 18 A.L.R. 742] is overruled, it does not state a cause of action for breach of contract.

*Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883] and *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], involve liability policies protecting an

---

distress, there must be evidence of 'severe emotional distress' . . . ." (*Id.* at p. 241.) To the extent that *Richardson* v. *Employers Liab. Assur. Corp.* is inconsistent with the views expressed herein, it is disapproved.

\*Assigned by the Chairman of the Judicial Council.

insured primarily against the claims of third persons. Such policies expressly reserve to insurer the exclusive right to investigate, defend, compromise, arbitrate or otherwise dispose of a claim against an insured and obligate the insured to cooperate. Insured's failure to cooperate may release the insurer. Such a policy handcuffs the insured's ability to protect himself and creates a fiduciary agency between the two. The interests of the insurer are to delay payment or indulge in other tactical conduct to achieve frugal disposition of claims or reject them. The interest of the insured is that claims against him be finally disposed of as promptly as good faith and fair dealing requires. This conflict obligates the insurer to handle all claims with the interest of the insured uppermost.

". . . As the champion of the insured, [the insurer] must consider as paramount his interests, rather than its own, and may not gamble with his funds. . . ." (7A Appleman, Insurance Law and Practice, § 4711, Insurer's Duty to Settle, p. 553, § 4712, p. 570.) Failure to do so is bad faith and renders the insurer liable for breach of its fiduciary duty, in the amount of the judgment over the policy limit. (*Ivy* v. *Pacific Automobile Ins. Co.,* 156 Cal.App.2d 652, 660 [320 P.2d 140]; *National Farmers Union Property & Casualty Co.* v. *O'Daniel,* 329 F.2d 60, 64-65; *Fetter Livestock Co.* v. *National Farmers U. P. & C. Co.,* 257 F.Supp. 4, 10.)

The rule propounded by *Comunale* and *Crisci* equates with a fiduciary duty on the insurer. The insurer has insisted upon and assumed high fiduciary obligations by the express terms of the only type of insurance an insured can buy.

The fire policy at bench differs from those construed in *Comunale* and *Crisci.* It protects only the insured and requires payment to insured. It does not per se create a fiduciary conflict of interest. (16 Appleman, Insurance Law and Practice (1973 Supp.) § 8867, p. 157, citing *Moses* v. *Manufacturers Life Ins. Co.,* 298 F.Supp. 321, affd. 407 F.2d 1142, cert. den. 396 U.S. 827 [24 L.Ed.2d 77, 90 S.Ct. 73].) All of the terms of a fire policy are written by the state Legislature. (Ins. Code, §§ 2070-2071.) Presumably the bargaining position of insurer and insured has been carefully weighed and is fair to both sides. Ordinary rules of construction should apply instead of the "adhesion rules" enunciated by *Tunkl* v. *Regents of the University of California,* 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], and kindred cases.

A fire policy also differs from that construed in *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286] (a health and disability policy). The policy in *Fletcher* was written by the insurer. It is subject to adhesion rules of construction. In spite of the

difference between the fire policy at bench and the policies in *Crisci* and *Fletcher*, it is assumed in this dissent that the duty of the insurer enunciated by those cases applies. It should be noted, however, that the *Crisci* court did say: "In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer. [Cases omitted.]

"Several cases, in considering the liability of the insurer, contain language to the effect that bad faith is the equivalent of dishonesty, fraud and concealment." [Cases omitted.] (Pp. 429-430.)

*Comunale* states at page 658: ". . . neither party will do anything which will injure the right of the other . . ." Good faith and fair dealing are expected on both sides. It is fair to assume that the doctrine of *Comunale* and *Crisci* is a two-way street.

The thrust of *Comunale* and *Crisci* is absence of good faith and fair dealing, but it appears that the thrust of cases like *Fletcher; Wetherbee* v. *United Ins. Co. of America,* 18 Cal.App.3d 266 [95 Cal.Rptr. 678]; *Richardson* v. *Employers Liab. Assur. Corp.,* 25 Cal.App.3d 232 [102 Cal.Rptr. 547], is grounded in conduct which is false, malicious, oppressive, unreasonable, misleading, or which indicates an intention to evade and not perform a fixed promise or which is outrageous or unconscionable and thus equates with or partakes of fraud. Amici point out that the theory of these cases is the intentional infliction of emotional distress. The majority, although stressing good faith and fair dealing, expand the doctrine of *Crisci* to include one or more of the elements of fraud involved in the cases cited above. Thus, if the complaint is bottomed on fraud, the ingredients of fraud should be properly pleaded.

### THE COMPLAINT DOES NOT STATE A CAUSE OF ACTION

Subjecting the complaint at bench to liberal construction, as it should be, and subjecting the fire policy involved to adhesion rules of construction and the doctrine of *Crisci* and *Fletcher*, although in fairness it should not be, no cause of action in tort is stated against insurer.

On the expanded premise of Crisci, waiving the rigorous requirements of a fraud pleading (3 Witkin, Cal. Procedure (2d ed. 1971) pp. 2211-2212), it could be conceded that if plaintiff had pleaded his cause of action in the form of conclusionary allegations generally acceptable in negligence pleadings, the complaint might withstand a general demurrer. (Code Civ. Proc., § 452; 3 Witkin, Cal. Procedure (2d ed. 1971) pp. 1948, 2119; *Reichert* v. *General Ins. Co.,* 68 Cal.2d 822, 840-841 [69 Cal.Rptr. 321, 442 P.2d 377].)

Plaintiff, however, did not content himself with conclusionary allegations. The complaint is large with probative facts detailing the basis of plaintiff's cause of action.[1] In addition, plaintiff has voluntarily supplied a portion of the transcript of the preliminary hearing referred to in the complaint as part of his record. In pertinent part the magistrate presiding at the preliminary hearing said:

"The fact that [plaintiff] left the premises within a couple of minutes after the bartender, Mr. Elias, and Mr. Elias testified he saw the defendant in his car passing him as he was at the next corner, a short block, would indicate to the Court that he would not have had time to have removed the door and spread the gasoline. Obviously, we are satisfied that the evidence supports the facts that the fire was incendiary; however, we do not feel there is sufficient evidence to connect it with the defendant."

Plaintiff attempts to weave the recited probative facts into a cause of action by the conclusionary allegation quoted by the majority ". . . defendants . . . joined together . . . to falsely imply that . . . plaintiff . . . deliberately set fire to . . . his place of business . . . [to avoid] . . . paying . . . the policies of insurance. . . ." This conclusionary allegation is then followed by a reiteration of the primary probative facts to show how insurer effectuated this purpose: (a) defendant Busching stated to an arson investigator plaintiff had excessive insurance; (b) defendant demanded an examination under oath and production of certain documents "to support the false implication . . . plaintiff was guilty of arson;" and (c) Busching appeared as a witness at a preliminary hearing in which plaintiff was charged with arson and reaffirmed in testimony under oath the statement referred to in (a). An additional conclusionary allegation follows: "that the defendants and each of them conducted themselves and acted in the manner as hereinabove alleged, intentionally and in bad faith for the sole purpose of depriving the plaintiff of the benefits of the policies of insurance issued by the defendant Insurers."

The majority say:

". . . plaintiff has alleged . . . that defendants wilfully and maliciously entered into a scheme to deprive him of the benefits of the fire policies in that they encouraged criminal charges by falsely implying that he had a motive to commit arson, and . . . knowing plaintiff would not appear for an examination during the pendency of criminal charges . . . they used his failure to appear as a pretense for denying liability under

---

[1]Pleader is preconcluded, as he should be, by material specific averments; general averments and conclusions are negatived when pleaded facts are to the contrary. (3 Witkin, Cal. Procedure (2d ed. 1971) pp. 1971, 1972, 2006, 2008, 2010.)

the policies. We conclude therefore that while the complaint is far from a model pleading, it does allege in substance a breach on the part of defendant insurance companies of their duty of good faith and fair dealing which they owed plaintiff."

In *Reichert,* the court commented on similar allegations at page 831: "The embellishments added by the pleader, as for example, that defendant 'in doing all of the things as herein alleged, has done them deliberately, fraudulently and oppressively,' and that defendant is 'guilty of oppression and fraud,' aside from their obvious conclusionary character, do not derogate from the contractual character of the pleading. In sum, it is abundantly clear that the liability sought to be imposed arises upon a contract."

Nowhere does the complaint allege that Busching's statement re excessive insurance is false or that Busching knew it was false when he made it and/or swore to it. The complaint alleges: ". . . Busching did not tell the investigator that at the same time a new insurance policy was issued to the plaintiff, other policies were being cancelled and that the face amount of fire insurance in effect as of September 18, 1969 was $15,000 less than had previously been in effect. At the time . . . Busching made the aforesaid statement to the investigator he had full knowledge of all the facts alleged in this paragraph."

Since Busching, according to plaintiff's quoted admission, knew about the cancellation of $15,000 worth of insurance, he obviously was directing his opinion to the insurance that remained in effect at the time he made his challenged statement, to wit: $35,000. The complaint does not allege that the insurance extant at the time of the fire was not excessive.

The decisive question as a matter of pleading is whether the pleaded facts which show the prudent exercise of legal and contractual rights and the performance of a public duty by an insurer can be, by an application of liberal rules of interpretation with the aid of conclusionary allegations, transmuted from lawful and prudent acts into "dishonesty, fraud and concealment" (*Crisci,* at p. 430), or oppressive, misleading, outrageous, unreasonable, unconscionable, wilful or malicious acts.

A complaint is not aided by allegations ". . . that the defendants and each of them joined together and acted in concert to falsely imply that the plaintiff had a motive to deliberately set fire to and burn down his place of business. . . ." There is no action for civil conspiracy in California. A conspiracy must stand or fall depending upon the commission of unlawful acts or civil wrongs. (*Chicago Title Ins. Co.* v. *Great Western*

*Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481]; *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549 [36 Cal.Rptr. 880].) In *Jacuzzi,* the court said at page 552: ". . . A demurrer does not . . . admit contentions, deductions or conclusions of facts or law which may be alleged. . . . The use of the words wrongfully, wilfully and maliciously adds nothing to the pleadings except to convey a sense of outrage on the part of the appellant (*Hancock* v. *Burns,* 158 Cal.App.2d 785, 790). . . ."

The request of insurer for an examination and production of documents was in accordance with the legislative mandate (Ins. Code, §§ 2070-2071). It was prudent, in good faith and in accordance with fair and accepted business practice. There is no suggestion of dishonesty, fraud or concealment. The thrust of the majority, as applied to the facts alleged, seems to be ". . . in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely not to withhold unreasonably payments due under a policy."

The test of good faith and fair dealing as applied at bench is, as has been pointed out, an extension of *Crisci.* The *Crisci* definition, as it has been extended, therefore must be applied to the three acts charged against insurer:

(1) Busching's privileged statement to an arson expert, reiterated under oath at preliminary hearing;

(2) Its request for an examination and inspection of documents;

(3) Its rejection of plaintiff's offer to submit to an examination two weeks after dismissal of the criminal charges.

None of the three acts trespass on the expanded definition of *Crisci.*

A prudent insurer cannot be charged with dishonesty, fraud or concealment, or with a violation of the expanded *Crisci* doctrine, by reason of the Busching statement. At bench, the insurer through Busching transmitted privileged information the day after the fire to an arson expert working for an interested governmental entity who, without insurer's knowledge, had in the early morning, when the fire occurred, already placed plaintiff under arrest. A prudent insurer has a duty to disclose all it knows and also its opinions to an arson expert in the employ of the city fire department who is charged with the responsibility to investigate fires.

It cannot be assumed from the facts alleged that: Busching made a false statement and knew it was false when he made it and aggravated his fraud with perjury; the information upon which it was based would

not have impelled a prudent insurer to act; the arson expert who had already arrested plaintiff would accept such a statement as the sole cause of his suspicion and not make an independent investigation; the district attorney would cause a felony complaint to be filed with no evidence other than the statement; the arson expert and the district attorney did not act in the proper exercise of a governmental function for a public purpose, but that instead they committed a felony to help insurer pressure the plaintiff; or that because the arson complaint was dismissed, insurers had not acted prudently, reasonably and legally in reliance upon California law then extant (*Hickman*). Insurer had the right and obligation to investigate if it had no suspicion about the fire. When it did have a suspicion the exercise of the right becomes not only a responsibility to stockholders, policyholders and the public, but its failure to exercise it would equate with negligent business operation. (*Amsden* v. *Grinnell Mutual Reinsurance Co.* (Iowa 1972) 203 N.W.2d 252, 255; *Machurek* v. *Ohio Nat. Life Ins. Co.*, 125 Neb. 35 [249 N.W. 81, 84].)

Busching's testimony at the preliminary hearing was not a sinister act. It was proper and valid.

Civic duty and conscience should impel one in the possession of relevant evidence to volunteer as a witness in the public interest in every case in which a crime is charged. However, lack of time, inconvenience, intimidating courtroom atmosphere, natural diffidence, dread of cross-examination and frequently actual hazards to their safety, comfort and purse, restrain prospective witnesses. One of the prime obstacles all public prosecutors encounter is persuading even interested witnesses to remember what they know, what they saw and heard and then inducing them to appear and testify. The majority would augment this difficulty.

The factual allegations of the complaint impel no conclusion that the adjuster committed perjury or that the adjuster, the arson expert, and the district attorney were severally guilty of the felony to conspire to obtain a conviction of plaintiff on false evidence. Such assumptions cannot be validly made on the basis of worthless conclusionary allegations which are contradicted by the probative facts pleaded, especially since all parties, except the insurer, to the alleged criminal conspiracy, are dismissed by the majority from any liability.

Concededly, plaintiff charged with a felony upon which a preliminary hearing had been calendared, was in a sensitive position. He had the right to invoke his Fifth Amendment privilege.[2] Insurer had the right and if it

---

[2] The majority state: ". . . defendants . . . maliciously entered into a scheme . . . by falsely implying . . . [plaintiff] had a motive to commit arson, . . . and . . .

suspected arson it had the obligation, under the prudent man rule enunci-ated by *Crisci*, to insist on an examination. The question posed is whether plaintiff can use his Fifth Amendment right to ignore or postpone his contractual obligation to submit to an examination by insurer. *Hickman* settled that to the contrary. (*Hickman* v. *London Assurance Corp.*, 184 Cal. 524, 531-533 [195 P. 45, 18 A.L.R. 742]; *Savoy Club* v. *Board of Supervisors* (1970) 12 Cal.App.3d 1034 [91 Cal.Rptr. 198]; *Marcello* v. *United States* (5th Cir.) 196 F.2d 437, 441; *Restina* v. *Aetna Casualty & Surety Company*, 61 Misc.2d 574 [306 N.Y.S.2d 219].)

The attorney's letter of November 25, 1969, fixes December 10, 1969 as the date of the examination. It should be noted the letter lists nine items covering papers, books and documents pertinent to a claim which plaintiff might file and requested plaintiff to bring the same with him. The letter does not state or suggest that there will be any interrogation as to the cause of the fire. Nor does the complaint charge that it does.

Assuming plaintiff had reasonable ground to request a delay, did the refusal of insurer at this stage to accede thereto predicated on the pleaded facts constitute such an abuse of the prudent man rule as to constitute bad faith and unfair dealing under the expanded definition of *Crisci?*

The criminal proceeding against plaintiff was dismissed and concluded on January 12, 1970. It might not have been concluded until January 12, 1980. Does the insurer have to await a final conclusion of criminal pro-ceedings to gather evidence or otherwise investigate by the exercise of legal rights to assist it in a determination of whether it has a responsi-bility? Is there ever any finality to a criminal judgment unless the defend-ant is acquitted?

If the insurer must wait, problems arise. The majority say: "In other words, the insurer's duty is unconditional and independent of the per-formance of plaintiff's contractual obligations." Plaintiff (a) could or would file a claim within the time allowed by the policy; and (b) if a claim were filed, could insurer ignore it until the plaintiff submitted to the request for examination? If insurer could ignore the claim, plaintiff would not collect his insurance until some time after the criminal proceed-ings had been concluded, but if 10 months or 10 years elapsed before plaintiff is acquitted of an arson charge, would insurer be responsible for

---

knowing plaintiff would not appear for an examination . . . used his failure . . . as a pretense for denying liability . . . ." Yet, in footnote 7 the majority say: "Plaintiff . . . does not contend . . . privilege justifies his failure to attend . . . ." Further, ". . . [P]laintiff's failure to appear . . . to submit to an examination . . . is not fatal . . . to . . . such cause of action; . . . ."

the claim plus interest from date of claim, from date of acquittal, or would it be called upon to defend an action for "unreasonable" or "unconscionable" delay arising from its outrageous and tortious temerity to exercise its legal right to investigate and question the cause of the fire.

Continuing with the arguendo assumption that plaintiff fairly used his Fifth Amendment privilege to abate or limit his contractual obligation to submit to an examination, did he fairly and in good faith invoke it as against his insurer?[3]

If good faith and fair dealing is a two-way street, it was the duty of plaintiff to submit to insurer in writing a waiver of his right to prompt settlement of his potential claim. No such waiver was made and none is pleaded. It would also have been good faith and fair dealing for plaintiff to indicate to insurer in writing, fortified with the acknowledgment of his lawyer that the books and other documents requested (identifying them) were in the custody of his lawyer, and would be made available to insurer when the criminal proceeding was concluded, or at some other appropriate time, or if there were no books or documents, to make a written statement to that effect.

Did good faith on plaintiff's part require him to appear for the examination and answer such questions and submit such documents as would not incriminate him? The privilege must be claimed at the time the questions are asked. (*Marcello* v. *United States, supra,* 196 F.2d 437, 441.)

Would plaintiff have incriminated himself if he had stated to insurer at any time before the date set for the examination (approximately two weeks after the first letter) that the statement re "excessive insurance" made by its adjuster was false and that the inventory he had predicated insurance upon was available for insurer's inspection?

Would it have been fair to the insurer and its adjuster, if an attempt had been made by plaintiff who was represented by counsel, to convince insurer of the money soundness of the insurance at risk and thus probably avoid any adverse testimony from the adjuster?

### Was Insurer Justified in Rejecting Plaintiff's Claim Presented After Dismissal of the Criminal Action? Was Delay Prejudicial?

Plaintiff argues that after the arson charge was dismissed, insurer rejected his claim even though he offered himself for examination and that

---

[3]The specific obligation of insurer is fixed by the majority as "in the case before us we consider the duty of an insurer to act . . . fairly . . . a duty not to withhold unreasonably payments due. . . ."

since insurer was not prejudiced by the delay, insurer should have accepted the claim and paid or otherwise acted upon it. (*Campbell* v. *Allstate Ins. Co.,* 60 Cal.2d 303, at p. 305 [32 Cal.Rptr. 827, 384 P.2d 155].) On this theory a clear and single question of law is presented. Was insurer obligated under the expanded *Crisci* doctrine to accept the claim or otherwise promptly act on it?

Plaintiff argues that his failure to appear for examination when it was requested cannot be a valid defense unless the insurer was substantially prejudiced thereby. "The burden of proving that a breach of a cooperation clause resulted in prejudice is on the insurer." (*Campbell, supra,* at p. 306.) (*Northwestern Title Security Co.* v. *Flack,* 6 Cal.App.3d 134, 141 [85 Cal.Rptr. 693]; *Bergeron* v. *Employers' Fire Ins. Co.,* 115 Cal.App. 672 [2 P.2d 453]; *Phillips* v. *Protection Insurance Co.,* 14 Mo. 220, 234-236; *Joyce* v. *United Ins. Co.,* 202 Cal.App.2d 654, 662 [21 Cal.Rptr. 361, 17 A.L.R.3d 517].)

*Hickman* v. *London Assurance Corp.,* 184 Cal. 524 [195 P. 45, 18 A.L.R. 742] (not overruled) and other well reasoned cases hold that the clause in the policy upon which insurer at bench relies is a condition precedent to collection of a claim.

Section 2071 of the Insurance Code says in pertinent part: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with. . . ." (*Claflin* v. *Commonwealth Insurance Company,* 110 U.S. 81, 97 [28 L.Ed. 76, 82, 3 S.Ct. 507]; *Restina* v. *Aetna Casualty & Surety Company* (1969) *supra,* 306 N.Y.S.2d at p. 219.)

Since the law abhors forfeitures it may be that the forfeiture of rights required by *Hickman* and other cases is not sound. However, proper perspective if good faith and fair dealing is the issue, would impel the court also to bear in mind that the law abhors penalties. There can be no question that a tort action with its loaded measure of damages is a penalty.

Thus, the question presented applying the expanded *Crisci* doctrine narrows itself to whether the insurer, guided by advice of counsel, and acting under a clause drafted by the Legislature and interpreted by this court as a condition precedent, can be properly accused of bad faith and unfair dealing when it rejected the claim. *Restina,* cited above, is on all fours with the facts at bench, and although by an inferior court, relies upon *Hickman.* When another court seeking only to administer the law,

relies upon the doctrine of *Hickman,* can this court which enunciated the doctrine, now say it was bad faith and unfair dealing for insurer to rely on it?

Should this court decide that *Hickman* does not compel a forfeiture of plaintiff's rights, does it follow that the court must, under *Crisci,* find bad faith and unfair dealing and penalize the insurer for no reason other than that it follows the law? In the circumstances, would· it be just to limit recovery to the amount of the policy, assuming insured can make the necessary proof?

In *Restina,* the New York court said in pertinent part:

"There does not appear to be any New York State case law authority on this particular issue. However, in Hickman v. London Assurance Corp., 184 Cal. 524, . . . the Supreme Court of California sitting en banc faced an identical situation as presented here, and it held that the constitutional immunity from self-incrimination did not absolve an insured from complying with the provisions of the insurance contract requiring the insured to submit to an examination under oath, even though the insured is at that time under indictment for arson for the burning of the property in question. The court further held that an insured's refusal to submit to such examination on those particular grounds constituted a breach of the contract and deprives the insured of any claim or cause of action against the insurer on the insurance contract.

"This court agrees with and adopts as its own the sound legal reasoning set forth in the Hickman case to the present case on this issue."

The majority accept nonperformance by plaintiff, avoid *Hickman* and ignore *Restina.* They say: "We conclude, therefore, that the duty of good faith and fair dealing on the part of defendant insurance companies *is an absolute one.* At the same time, we do not say that the parties cannot define, by the terms of the contract, their respective obligations and duties. We say merely that no matter how those duties are stated, the non-performance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (Italics added.)

Does this mean that irrespective of how well defined the obligations of plaintiff are, he can ignore them and still demand performance on the part of the other party? Under liberal rules of pleading it is required that a

plaintiff in a breach of contract complaint make it clear that plaintiff has performed in all respects and defendant has not.

It is respectfully suggested that the majority have advised an insurer that if it expects to avoid a *Crisci* or *Fletcher* lawsuit, there is only one safe course: Pay all claims and investigate afterwards, assuming, of course, payment doesn't waive that right.

I would affirm the judgment.

Respondents' petition for a rehearing was denied July 18, 1973.