Filed 1/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DENNIS STRAWN et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>MORRIS, POLICH & PURDY, LLP et al.,<br><br>      Defendants and Respondents. | A150562<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-16-553558) |

After their insurance company denied coverage for a home and vehicle that were damaged or destroyed in a fire, the owners sued the insurer and its attorneys. The present appeal is from the dismissal of the owners' claims against the insurer's attorneys for invasion of privacy and financial elder abuse. The owners contend the trial court erred in sustaining the attorneys' demurrer without leave to amend. We affirm as to the cause of action for financial elder abuse and reverse as to the cause of action for invasion of privacy.

**BACKGROUND**

Appellants' home and pickup, which were insured by State Farm General Insurance Company (State Farm), were "damaged and destroyed" by fire on June 1, 2009. They immediately notified State Farm.

Dennis Strawn was prosecuted for arson in connection with the fire, but the case was ultimately dismissed on February 19, 2013.

In August 2015, State Farm informed appellants that it was denying their claims on the ground that Dennis Strawn had intentionally set the fire and Diane Strawn had fraudulently concealed evidence of this wrongful conduct.

1

On August 8, 2016, appellants filed a complaint alleging causes of action against State Farm for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, invasion of privacy and elder abuse. The fourth and fifth causes of action, for invasion of privacy and elder abuse, were also alleged against Douglas K. Wood, the attorney who represented State Farm, and Morris Polich & Purdy, LLP (MPP), the law firm in which Wood was a partner.

The first three causes of action, although alleged only against State Farm, set the stage for appellants' claims against respondents. The gist of these claims was that State Farm breached its contract with appellants and the covenant of good faith and fair dealing by seeking to avoid its obligations by conduct including insisting on receipt of information from appellants that was not relevant to the cause of the fire, encouraging a criminal prosecution of Dennis Strawn for arson, and denying coverage unreasonably and in bad faith.[1]

---

[1] More specifically, appellants alleged that State Farm, throughout its investigation of the claim, "adopted a policy of delay and deny, insisting on the receipt of personal information from [appellants] that had no relevance to the cause and origin of the fire that was the loss, but was instead simply an excuse to avoid their obligations to their insureds." Among other specific breaches of obligation by State Farm, appellants alleged that the insurer "set out from the time of the fire to attempt in every way possible to avoid paying the benefits due to [appellants] under the terms of the policy," "went so far as to encourage and foment a criminal prosecution of Dennis Strawn," and, when the criminal case was dismissed, "continued on its crusade to deny [appellants] the insurance coverage they had paid for . . . in spite of the fact that there was no evidence linking either plaintiff to any wrongdoing that had not been presented in the unsuccessful prosecution of Dennis Strawn."

The second cause of action for breach of the covenant of good faith and fair dealing, alleged that State Farm "unreasonably and in bad faith withheld benefits due under the policies" by "unreasonably and in bad faith denying coverage." Appellants also alleged that State Farm, "for its own benefit and ignoring the damage to its insureds," delayed in satisfying its contractual obligation to pay off appellants' mortgage, which was not subject to the defenses against coverage State Farm asserted against appellants, despite knowledge that the criminal prosecution State Farm had "aided and promoted" left appellants "in a financial position that made it impossible for [appellants] to make the loan payments," and waited to make any payments until after the bank had

2

In the fourth cause of action, for invasion of privacy, appellants alleged that Wood, as representative for State Farm, repeatedly demanded that appellants produce financial records, including tax returns; that appellants were aware that tax returns are privileged against disclosure and refused to waive the privilege; that appellants authorized their accountant to provide to Wood and State Farm financial records that were used to prepare the tax returns, but not the actual tax returns; that the accountant's office mistakenly provided the returns along with the other financial information; and that Wood, despite having been expressly informed that appellants were not waiving privilege, failed to advise appellants of the error and sent the returns to State Farm and the forensic accounting firm it hired, which used information from the returns in the analysis it provided to State Farm. Appellants alleged that in "publishing" the tax returns to "third parties," including State Farm employees, Wood and MPP violated their right to privacy under article 1, section 1, of the California Constitution.

In the fifth cause of action, for elder abuse, appellants alleged that Wood and MPP "assisted" State Farm in "retaining funds belonging rightfully to [appellants] for "its wrongful use or with the intent to defraud [appellants] or both" in violation of Welfare and Institutions Code section 15610, subdivision (a)(2).[2]

---

foreclosed on the loan "because the foreclosure gave State Farm a credit against the amount owed the bank for the amount the bank recovered out of the foreclosure."

The third cause of action for intentional infliction of emotional distress additionally alleged that State Farm "within a day of the accident hired an 'expert' whose job was to attempt to create a case that would result in a conviction of Dennis Strawn for arson, a felony, in spite of zero evidence to support that conclusion"; "aided and encouraged Cal Fire to seek an arson prosecution"; and withheld "exculpatory evidence that tended to show that any intentional wrong doing was done by others," which it learned of early in its investigation, "until right at the end of the prosecution."

[2] This statute is part of the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act). (Welf. & Inst. Code, § 15610 et seq.)

Further statutory references will be to the Welfare and Institutions Code except as otherwise specified.

Respondents filed a demurrer to the fourth and fifth causes of action. After a hearing, the trial court sustained the demurrer without leave to amend and dismissed the complaint as to Wood and MPP. Judgment of dismissal was filed on December 7, 2016, and this appeal followed.

## DISCUSSION

On appeal from a judgment of dismissal entered after a general demurrer is sustained, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory" (*McCall v. PacifiCare of Cal. Inc.* (2001) 25 Cal.4th 412, 415), assuming the truth of properly pleaded facts but not " ' "contentions, deductions or conclusions of fact or law." ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) When the demurrer is sustained without leave to amend, the burden of proving there is a reasonable possibility the defect can be cured by amendment " 'is squarely on the plaintiff.' " (*Ibid.*)

## I.

The trial court sustained the demurrer to the invasion of privacy claim on the ground that it was barred by the litigation privilege. (Civ. Code, § 47, subd. (b)(2).) With the "principal purpose" of affording litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions," the privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212-213.) "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment Assn.*).)

As the trial court explained, appellants' cause of action for invasion of privacy was based on Wood's alleged transmittal of appellants' tax returns to State Farm. The court found the litigation privilege applicable because at the time the returns were transmitted,

4

respondents were representing State Farm "in anticipation of a possible lawsuit concerning the claim made by [appellants] for the fire damage to their residence and vehicle." Appellants challenge this determination by arguing that their claim is based on Wood's *conduct*, while the litigation privilege applies only to *communication,* and that this conduct occurred while State Farm was investigating the insurance claim, well before any litigation.

Appellants' first point is not persuasive. " 'The distinction between communicative and noncommunicative conduct hinges on the *gravamen of the action*. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from *an act that was communicative in its essential nature*. [Citations.] The following acts have been deemed communicative and thus protected by the litigation privilege: attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation [citation], and testimonial use of the contents of illegally overheard conversation [citation]. The following acts have been deemed noncommunicative and thus unprivileged: prelitigation illegal recording of confidential telephone conversations [citation]; eavesdropping on a telephone conversation [citation]; and physician's negligent examination of patient causing physical injury [citation].' " (*Action Apartment Assn., supra,* 41 Cal.4th at p. 1248, quoting *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1058.)

Here, the gravamen of appellants' claim is that Wood improperly provided their tax returns to State Farm and its accountants despite appellants' assertion of their privilege to not disclose the returns. The cause of action for invasion of privacy alleged that Wood "passed the wrongfully obtained tax returns along to" and "publish[ed]" appellants' "private tax returns to third parties." The very language of the complaint demonstrates that it was based on Woods' communication of information to State Farm and its accountants. Appellants alleged no "independent, noncommunicative, wrongful act" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 957) as the basis of their claim.

Appellants' second argument, however, has merit. "A prelitigation communication is privileged only when it relates to litigation that is contemplated in

5

good faith and under serious consideration." (*Action Apartment Assn., supra,* 41 Cal.4th at p. 1251.) "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." (*Ibid.*) The Supreme Court noted the example of *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359 (*Eisenberg*), which held that the trial court erred in granting summary judgment on the basis of the litigation privilege because " '[i]t remain[ed] a triable issue of fact whether . . . imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute between [the parties].' " (*Action Apartment Assn.*, at p. 1251, quoting *Eisenberg,* at p. 1381.) As *Eisenberg* explained, first, "the 'mere possibility or subjective anticipation' of litigation is insufficient; it is necessary that there be proof of 'some *actual verbalization* of the danger that a given controversy may turn into a lawsuit . . . .' (*Edwards* [*v. Centex Real Estate Corp* (1997)] 53 Cal.App.4th [15,] 35, 34 [(*Edwards*)], italics added.) Second, even though '[i]t is not necessary that a party make an actual "threat" of litigation,' there must be 'a serious, good faith proposal.' (*Id.* at p. 35.) Third, the contemplated litigation must be *imminent.* (*Ibid.*) Although '[t]he classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled,' it is not the mere *threat* of litigation that brings the privilege into play, but rather the actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute. (*Id.* at pp. 35–36 & fn. 10.) '[B]ecause the privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed *in good faith* for the purpose of resolving the dispute, even a threat to commence litigation will be insufficient to trigger application of the privilege if it is actually made as a means of inducing settlement of a claim, and not in good faith contemplation of a lawsuit. This is a question of fact that must be determined before the privilege is applied. [Citations.]' (*Id.* at p. 35, fn. 10.)" (*Eisenberg,* at pp. 1379–1380.)

Here, the complaint alleges that Wood received the tax returns and transmitted them to State Farm and the accountants, who used the returns in the analysis they

6

provided to State Farm. The communication and subsequent use of the information by the accountants occurred during State Farm's investigation and processing of appellants' insurance claim. No litigation was pending at the time: The criminal prosecution had concluded, and the present litigation was not instituted until August 8, 2016, almost a full year after State Farm denied the claim. This timing alone raises at least a question as to whether litigation was "imminent" at the time Wood passed the tax returns along as alleged.

Respondents argue that the alleged wrongful forwarding of appellants' tax returns comes within the litigation privilege because it was "in anticipation of the civil action" appellants "would surely (and did in fact)" file if State Farm denied their claim despite Dennis Strawn not having been convicted of arson. Respondents maintain that Wood was acting to protect his client in anticipated litigation and that appellants demonstrated they also anticipated litigation by retaining legal counsel before the present case was actually filed. Respondents also argue that the alleged wrongful forwarding of the tax returns had "some connection or logical relation" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212) to both the present suit and the criminal prosecution because the fact Dennis Strawn was prosecuted shows there was at least probable cause to believe he had intentionally caused the fire (*Lee v. Crusader Ins. Company* (1996) 49 Cal.App.4th 1750, 1759); the financial condition of the insured is "relevant and material" where an insurer "has reason to suspect arson" (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1001); and the fact that the criminal case did not result in conviction does not mean State Farm had no basis for continued suspicion, given the higher standard of proof required for proof of a criminal offense. (*Ibid.*; see *Suggs v. State Farm Fire and Casualty Co.* (10th Cir. 1987) 833 F.2d 883, 891 [denial of claim not in bad faith denial despite arson charges having been dropped].)

We do not question the assumption that, in the context of an insurance claim being investigated following the dismissal of criminal charges of arson against the insured, it may have appeared "likely" that denial of the insurance claim would lead to a civil action against the insurer. But "[r]espondents cannot gain the protection of the privilege to

7

protect their own communications merely by establishing that they anticipated a potential for litigation," as " 'the privilege only arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute.' " (*Eisenberg, supra*, 74 Cal.App.4th at p. 1381, quoting *Edwards, supra*, 53 Cal.App.4th at p. 39.) That State Farm had a basis for suspicion of Dennis Strawn did not necessarily preordain the denial of appellants' insurance claim, nor did appellants' retention of counsel necessarily reflect serious contemplation of litigation as opposed to a desire for assistance in a complicated insurance claim process.[3]

Moreover, it is not clear that at the point Wood allegedly wrongfully transmitted the tax returns to State Farm and its accountants, State Farm was contemplating litigation "in good faith as a means of resolving the dispute" (*Eisenberg, supra,* 74 Cal.App.4th at p. 1381). " 'In order for [respondents] to be able to take advantage of the [litigation] privilege by applying it to their *own* communications, they must establish that at the time they made the subject communications, they *themselves* actually contemplated prospective litigation, seriously and in good faith.' " (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 948, quoting *Edwards, supra*, 53 Cal.App.4th at p. 39.) The complaint's allegations that State Farm "encourage[d] and foment[ed]" the criminal prosecution of Dennis Strawn raise a question as to State Farm's good faith, as does the

---

[3] The cases respondent cites involve significantly stronger connection to actual or impending litigation than what appellants allege here. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195 [discussion of merits of proposed lawsuit with prospective plaintiffs]; *Rosenthall v. Irell & Manella* (1982) 135 Cal.App.3d 121, 126 [reference in dicta to "potential court actions" but case itself involved pending appeal]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781-782 [attorney's letter stating intention to file complaint with state attorney general]; *Lebbos v. State Bar of California* (1985) 165 Cal.App.3d 656, 668-669 [communications with client-complainants in investigation for state bar disciplinary proceedings]; *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 577-578 [attorney's demand letter stating intention to sue if settlement could not be reached].)

suggestion that State Farm was contemplating litigation during the investigatory portion of its claim processing. There may always be *potential* for litigation when an insurance claim is denied, but respondents' and the trial court's rationale in effect assumes that the investigation involved in processing an insurance claim is *necessarily* conducted in anticipation of litigation (at least where there is some basis to suspect fraud by the insured). The allegations of the complaint raised a factual question as to whether, when Wood forwarded appellants' tax returns, State Farm was, in good faith, seriously considering litigation. Accordingly, the demurrer should not have been granted on the basis of the litigation privilege.

Nor can the demurrer be upheld, as respondents urge, on the basis that appellants failed to state a claim for invasion of privacy.

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 (*Hill*).) The last of these elements " 'is intended simply to screen out intrusions on privacy that are de minimis or insignificant.' " (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 339, quoting *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 891.) "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." (*Hill,* at p. 37.)

Appellants certainly alleged a legally protected privacy interest. Tax returns are privileged from disclosure. (*Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 512-513.) "The purpose of the privilege is to encourage voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection." (*Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 274; *Webb,* at p. 513.) The tax return privilege "is not absolute" and "will not be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved."

9

(*Weingarten,* at p. 274.) But the significance of the privilege is underscored by the fact that the Insurance Code specifically requires insurers to inform their insureds that tax returns are privileged against disclosure. In delineating an insured's obligations to provide information to the insurer, Insurance Code section 2071, subdivision (a), provides, "The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim."

Respondents argue that appellants did not allege a sufficiently serious invasion of privacy to make their claim actionable. They emphasize the relevance of appellants' financial condition to State Farm's investigation of the claim. As indicated above, "[w]here the insurer has reason to suspect arson, it is relevant and material to inquire into the financial condition of the insured because an insurer is entitled to develop circumstantial evidence of the insured's involvement in the suspected arson." (*Abdelhamid v. Fire Ins. Exchange, supra,* 182 Cal.App.4th at p. 1001.)

But the relevance of the tax returns does not necessarily overcome the privilege— as Insurance Code section 2071 demonstrates. As indicated by the language of the statute quoted above, Insurance Code 2071 recognizes the potential relevance of tax returns by requiring insurers to advise their insureds that tax returns may be "necessary to process or determine" claims but maintains the insured's taxpayer privilege against disclosure, in essence permitting the taxpayer to determine whether to disclose the returns despite potential consequences in terms of the processing of the claim. That a court may have discretion to compel disclosure in an appropriate case (see *Slojewski v. Allstate Ins. Co.* (N.D. Cal. Mar. 18, 2013) 2013 WL 1117142 [plaintiff compelled to produce rental income information in tax returns in suit concerning denial of insurance claim for lost rental income]; *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 722-723 [in marital dissolution, wife entitled to discovery of corporate tax returns relevant to husband's payroll husband required to produce corporate tax of close corporation relevant to determination of parties' financial status and community property interests]), does not negate the seriousness of the privacy interest protected by the privilege; it merely

recognizes that other considerations may prevail in a balancing of interests in a given case.

Here, for example, whether the public policy of preventing insurance fraud outweighs the confidentiality of tax returns would depend, in part, on the extent to which the financial information appellants *did* disclose was sufficient to allow State Farm to determine appellants' financial condition, and the extent to which the returns revealed confidential information *not* relevant to State Farm's investigation (e.g., medical deductions). Similarly, the seriousness of the privacy invasion worked by disclosure of the tax returns would depend on what information was contained in the returns that was not also contained in the voluntarily disclosed financial documents from which the tax returns were prepared. In short, the seriousness of the alleged invasion of privacy presented a question of fact that could not be resolved on demurrer.[4]

Respondents additionally argue that because Wood did nothing "illegal or illicit" to obtain appellants' tax returns, the onus for any violation of appellants' privacy rights should be on appellants' accountants, who mistakenly produced the returns. This argument misses the point: Appellants' invasion of privacy claim is based on Wood's sending the tax returns to State Farm despite his knowledge that appellants had a right to refuse such disclosure and had not waived this right. That Wood sent the tax returns only to his client and its forensic accountants—-the entities involved in investigating and processing appellants' insurance claim, both of which were prohibited from further

---

[4] The same is true of respondents' contention that appellants waived their taxpayer privilege by pursuing an insurance claim to which the tax returns were relevant. (See *Wilson v. Superior Court* (1976) 63 Cal.App.3d 825, 828-831 [taxpayer privilege waived by filing suit raising issues as to contents of tax returns]; *Fremont Indemnity Co. v. Superior Court* (1982) 137 Cal.App.3d 554, 559 [privilege against self-incrimination as to factual issues, especially application of arson exclusion, waived by filing suit over rights under fire insurance policy].) The reasoning of cases such as these is that " '[t]he gravamen of [the] lawsuit is so inconsistent with the continued assertion of [a] privilege as to compel the conclusion that the privilege has in fact been waived.' " (*Fremont,* at p. 559, quoting *Wilson,* at p. 830.) Whether that reasoning applies in the present circumstances would depend, again, on what information was revealed in the tax returns beyond that contained in the material appellants agreed to disclose.

disclosing the information except as specified by statute (Ins. Code, § 791.13)—also misses the point. Appellants allege they were harmed by the invasion of privacy inherent in having their privileged tax returns published to the insurer and its agents without their authorization and despite their assertion of privilege. Whether appellants can *prove* an invasion of privacy "sufficiently serious in . . . nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right" (*Hill*, *supra,* 7 Cal.4th at p. 37) remains to be seen when the parties' evidence is produced on a motion for summary judgment or at trial. At this stage of the proceedings, however, we cannot conclude appellants failed to state a cause of action for invasion of privacy.

## II.

As relevant here, section 15610.30, subdivision (a), provides that " '[f]inancial abuse' of an elder or dependent adult occurs when a person or entity . . . [¶] . . . [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." (*Id*., subd. (b).) "For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." (*Id*., subd. (c).)

Appellants' cause of action under this statute alleged that State Farm "was assisted in retaining funds belonging rightfully to [appellants] for its wrongful use or with the intent to defraud [appellants] or both" by Wood and MPP. The conduct alleged as the basis of the claimed elder abuse is thus the insurer's denial of access to funds appellants

12

believed were due under the insurance policy. The allegations of this cause of action do not describe the manner in which respondents "assisted" in the alleged taking/retention of funds; the only allegations in the complaint regarding conduct by respondents are those described above regarding appellants' tax returns. The gravamen of appellant's claim against respondents is thus that Wood helped State Farm wrongfully deny appellants' insurance claim by supplying State Farm with tax returns as to which Wood knew appellants had not waived taxpayer privilege.

Respondent argues that this claim should be rejected as an improper attempt to avoid the rule that an insurer's agents cannot be found liable for bad faith denial of coverage. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566 (*Gruenberg*).)[5] *Gruenberg* held that agents of insurance companies—an insurance adjuster and an attorney and their respective firms—could not be held liable for breach of the covenant of good faith and fair dealing in an insurance contract because "the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy. (*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72.) This rule, as was explained in *Wise* (at pp. 72-73) 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.' " (*Gruenberg*, at p. 576.)

---

[5] The trial court found the claim of elder abuse was not cognizable against attorneys representing an insurer sued for denial of benefits absent allegations that the attorney personally received funds withheld from the plaintiffs. At the hearing, the court additionally stated that the cause of action was not cognizable because "the only way that a party, such as the lawyer here, could defend himself would be to require him to disclose attorney-client privilege information, and there is clear case law in this state that says, when the only way to defend yourself is to disclose attorney-client information, a claim is not available."

13

Respondents' argument is well-taken. An insurer's bad faith denial of a claim can support a cause of action for financial elder abuse. (*Johnston v. Allstate Ins. Co.* (S.D. Cal. May 23, 2013) 2013 WL 2285361, *4; *Crawford v. Continental Casualty Insurance Co.* (C.D. Cal. July 24, 2014) 2014 WL 10988334, *2; *Rosove v. Continental Cas. Co.* (C.D. Cal. June 2, 2014) 2014 WL 2766161, *4-5.) But to say that an attorney who assists the insurer in investigating the claim, acting solely as representative of the insurer, can be liable for financial elder abuse would impose liability where *Gruenberg* held there could be none. Appellants do not allege that respondents acted in any way " 'as individuals for their individual advantage' and not solely on behalf of the principal (*Wise v. Southern Pacific Co.*, *supra*, 223 Cal.App.2d at p. 72)," or that respondents themselves owed any obligation to appellants. (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 47-48.)

Appellants' assertion that *Gruenberg* is irrelevant because respondents were not sued "for bad faith or conspiracy to commit bad faith" misses the point. Because the claim that respondents assisted State Farm in committing financial elder abuse is based on State Farm's alleged bad faith denial, appellant's claim against respondents is, in effect, an attempt to avoid the effect of *Gruenberg*.

In sustaining the demurrer to this cause of action, the trial court commented that interpreting section 15610.30 as imposing liability on an attorney in the circumstances of this case would "open up what has been a very confined door in the instances when a . . . non client can sue a lawyer for conduct that a lawyer undertook in connection with the representation of somebody else outside of malicious prosecution and abuse of process." With respect to this comment as well as *Gruenberg*, appellants argue that it is incorrect to view imposing liability upon attorneys who assist their clients in committing financial elder abuse as "too much of a departure from the common law" because "the elder abuse statute is itself a major departure from the common law" in that it provides "enhanced penalties to encourage private, civil lawsuits to vindicate the purpose behind the legislation—the protection of elders."

14

The Elder Abuse Act was enacted with the purpose of protecting elders, who are particularly vulnerable to abuse, "by providing heightened remedies that encourage private enforcement of laws against abuse and neglect." (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*).)[6] Reviewing the history of the legislation, the court in *Mahan* explained that when first enacted, "its primary focus was on data collection and encouraging the reporting of claims as a way of facilitating criminal enforcement," but with amendments in 1991 " 'the focus shifted to private, civil enforcement of laws against elder abuse and neglect.' " (*Mahan,* at p. 858, quoting *Delaney v. Baker* (1999) 20 Cal.4th 23, 33.) "A key objective of the 1991 amendments was to remedy the fact that 'few civil cases [were being] brought in connection with [elder abuse] due to problems of proof, court delays, and the lack of incentives to prosecute these suits.' (§ 15600, subd. (h); see Cal. Elder Law Litigation: An Advocate's Guide (Cont.Ed.Bar [1st ed. May] 2016) § 6.2, p. 6-4.)" (*Mahan,* at p. 858.) "The template for private enforcement" was set in section 15657, which applies to cases of physical abuse or neglect and "sets forth a scheme of heightened remedies—punitive damages (§ 15657, subd. (c)), attorney's fees and costs (*id.*, subd. (a)), and exemption from certain limitations on recoverable damages in survivorship actions (*id.*, subd. (b))— designed to provide incentives for 'interested persons to engage attorneys to take up the cause of abused elderly persons . . .' (§ 15600, subd. (j)). These remedies are available only where the plaintiff proves by clear and convincing evidence that 'the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse.' (§ 15657.)" (*Mahan,* at p. 858.) Section 15657.5, pertaining to financial abuse, "sets forth a scheme of heightened remedies closely paralleling those available under section 15657, but with some key differences, principally that attorney's fee and cost awards are available for 'financial abuse' claims proved by the preponderance of the evidence, while

---

[6] As noted in *Mahan,* courts are divided over whether provisions of the Elder Abuse Act " 'create independent causes of action or merely enhance the remedies available under preexisting causes of action.' " (*Mahan, supra,* 14 Cal.App.5th at p. 858, fn. 11*,* quoting *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 743–744.)

clear and convincing evidence remains the standard applicable to fee and cost recovery for claims of 'physical abuse' or 'neglect.' " (*Mahan,* at p. 859.)

Nothing in this history suggests that section 15610.30 was intended to impose liability upon the attorney acting solely on behalf of an insurer for the insurer's bad faith denial of coverage in circumstances where the *Gruenberg* rule would apply. We conclude that appellants failed to state a claim against respondents for financial elder abuse. Appellants have not suggested any way in which amendment could cure the defect.

## DISPOSITION

The judgment of dismissal is reversed. The order sustaining the demurrer to the cause of action for financial elder abuse is affirmed. The order sustaining the demurrer to the cause of action for invasion of privacy is reversed. The matter is remanded for proceedings consistent with the views expressed herein.

The parties shall bear their own costs.

_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*Strawn et al. v. State Farm General Insurance Company et al.* (A150562)

17

Trial Court:                          San Francisco County Superior Court

Trial Judge:                          Hon. Harold Kahn

Attorneys for Appellants:             Law Offices of Paul J. O'Rourke, Jr.
                                      Paul J. O'Rourke, Jr.

                                      Barr & Mudford, LLP
                                      John Douglas Barr

Attorneys for Respondents:            Morris Polich & Purdy, LLP
                                      Gary A. Hamblet
                                      John Sang-Kyu Na

                                      Roeca Haas Montes De Oca, LLP
                                      Russell S. Roeca
                                      Kyle Montes De Oca
                                      Audrey Tam
                                      Daniel Hager