Filed 3/15/21  Ventures v. Rodeo Capital CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JHM VENTURES,<br><br>　　　Plaintiff, Appellant, and Cross-Respondent,<br><br>　　v.<br><br>RODEO CAPITAL, INC. et al.,<br><br>　　　Defendants, Respondents, and Cross-Appellants. | B298909<br><br>(Los Angeles County Super. Ct. No. 18STCV10373) |

APPEALS from an order of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Reversed with directions.

Levatolaw and Stephen D. Weisskopf for Plaintiff, Appellant, and Cross-Respondent.

Ervin Cohen & Jessup and Michael C. Lieb for Defendants, Respondents, and Cross-Appellants.

_____

# INTRODUCTION

Rodeo Capital, Inc. and its officers persuaded JHM Ventures to loan $400,000 in a junior position to the owners of a commercial property in Illinois after another, senior group of investors had already lent the owners of the property $3,100,000. After the property owners failed to repay JHM's loan, Rodeo Capital's officers persuaded JHM not to foreclose by falsely claiming they would "get [JHM's] money back" and by misrepresenting and concealing certain information about the property. By the time JHM learned the truth, the property was "under water." Rodeo Capital and the senior investment group subsequently foreclosed on the property and sought to extinguish JHM's interest. JHM sued Rodeo Capital, its officers, and the senior investors, claiming JHM would not have made the loan or, having made the loan, would have foreclosed on the property sooner had they not misrepresented and concealed material information about the property.

Rodeo Capital, its officers, and some of the senior investors filed a special motion under Code of Civil Procedure section 425.16 (section 425.16) to strike certain allegations in JHM's complaint, arguing the allegations sought relief for petitioning activity. In particular, the moving defendants argued the complaint included claims based on prelitigation statements that persuaded JHM not to foreclose on the property and that arose from the foreclosure action filed by Rodeo Capital and the senior investors. The trial court granted in part and denied in part the motion, and both sides appealed.

We conclude the moving defendants failed to show that they made the challenged misrepresentations and omissions in

2

anticipation of litigation contemplated in good faith and under serious consideration or that JHM sought relief based on Rodeo Capital's foreclosure action. Therefore, we hold the challenged conduct falls outside the scope of section 425.16, vacate the trial court's order, and direct the trial court to enter a new order denying the special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *JHM Invests in Illinois Real Estate*

In or around December 2013 Rodeo Capital officers Richard Katz and Gregg Bernstein (collectively with Rodeo Capital, the Rodeo Capital Group) approached JHM about investing in a commercial property in Illinois. A group of investors (the Illinois Borrowers) were looking for a $3,500,000 loan, $3,100,000 of which would come from another investment group who would be in a position senior to JHM (the Senior Investors). Katz and Bernstein asked JHM to loan the remaining $400,000 to the Illinois Borrowers and receive as security a second mortgage on the property.[1]

---

[1] Under Illinois law a mortgage is "any consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation." (735 Ill. Comp. Stat. Ann. 5/15-1207; see *Paliatka v. Bush* (Ill. App. Ct. 2018) 109 N.E.3d 343, 350.) In California promissory notes are secured by deeds of trust, not mortgages, although deeds of trust and mortgages "perform the same basic function, and . . . a deed of trust is 'practically and substantially only a mortgage with power of sale.'" (*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553; see *Jenkins v.*

3

The Rodeo Capital Group acted as investment advisors to JHM and conducted due diligence on the Illinois property. According to JHM, Katz and Bernstein made numerous representations to induce JHM to make the loan, including that the Senior Investors would act as a "friendly first," meaning that, in the event of a default, the Senior Investors would act jointly with JHM to foreclose. Katz and Bernstein allegedly told JHM "they were all in this investment together." Katz and Bernstein also presented JHM with an appraisal valuing the property at $5,250,000 and said the property had a "credit worthy anchor tenant." Based on these representations, JHM in December 2013 agreed to make a $400,000 loan to the Illinois Borrowers for a term of one year. Specifically, JHM alleged that it "entered into a Loan Agreement (a second mortgage) with the Illinois Borrowers in the amount of $400,000" and that it "was a one-year loan that matured on December 31, 2014, which required only monthly interest payments."

The Illinois Borrowers made monthly interest payments on the loan through 2014, but did not repay the principal when it became due on December 31, 2014. Throughout 2015 Katz and Bernstein persuaded JHM not to foreclose on the property by assuring JHM it would recover the principal amount of the loan. Katz and Bernstein stated the Illinois Borrowers were about to sell the property, were in escrow to sell the property, or had a signed letter of intent to sell the property, none of which was true. According to JHM, the Rodeo Capital Group also gave the Illinois Borrowers "extensions" without JHM's prior consent.

---

*JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, fn. 2, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939.)

In approximately May 2017 the Illinois Borrowers stopped making monthly interest payments. Katz and Bernstein continued to discourage JHM from foreclosing by making false representations about a pending sale or refinance. JHM learned the anchor tenant had not been paying rent for some time, had defaulted on its lease, had vacated the premises, and owed creditors hundreds of thousands of dollars. Katz and Bernstein allegedly knew the anchor tenant was "a shell limited liability company with no assets" whose parent company had not guaranteed the lease, but they did not reveal that information before JHM agreed to make the loan. At some point JHM also learned the Illinois Borrowers had fallen behind on property tax payments beginning in 2015 and owed almost $2 million in taxes by the end of 2018. The loss of the anchor tenant, together with the unpaid taxes, reduced the value of the property to less than $3,500,000.

Unbeknownst to JHM, in March 2017 Rodeo Capital and the Senior Investors entered into a settlement agreement with the Illinois Borrowers and took possession of the property without assuming responsibility for JHM's second mortgage. In June 2018 Rodeo Capital and the Senior Investors filed a foreclosure action in Illinois to extinguish JHM's mortgage.

> B. *JHM Files This Action Against the Rodeo Capital Group and the Senior Investors, Who File a Special Motion To Strike Under Section 425.16*

JHM sued the Rodeo Capital Group and the Senior Investors for intentional misrepresentation, concealment, promissory fraud, and negligent misrepresentation, and Rodeo Capital only for breach of fiduciary duty and negligence. JHM

alleged the Rodeo Capital Group and the Senior Investors misrepresented certain material facts and omitted others to induce JHM to lend the Illinois Borrowers $400,000, failed to disclose material information about the property, misrepresented certain material facts and concealed others to persuade JHM not to foreclose on the property when JHM could have recouped its investment, secretly entered into a settlement agreement with the Illinois Borrowers, and sought to extinguish JHM's interest in the property through a foreclosure action. JHM alleged that, at all relevant times, Katz and Bernstein acted as "owners/representatives" of Rodeo Capital and as agents for the Senior Investors. JHM sought damages for inducing JHM to invest in the Illinois property, failing to repay JHM's loan, and convincing JHM under false pretenses to "forbear from foreclosing" on the Illinois property.

The Rodeo Capital Group and some of the Senior Investors filed a special motion to strike certain allegations in the complaint under section 425.16, subdivision (e)(2).[2] In particular,

_____

[2] The Senior Investors that JHM named as defendants included Rodeo Capital, HIF Lenders II, Inc., Edwin H. Bernstein and Jeanne C. Bernstein in their representative capacities as trustees of the E&J Bernstein Revocable Trust, Jacqueline Davis in her representative capacity as trustee of the Jacqueline Davis Living Trust, Gary I. Jubas and Jo Ann Jubas in their representative capacities as trustees of the Gary I. Jubas and Jo Ann Jubas Revocable Trust dated February 11, 1997, Marvin Jubas in his representative capacity as trustee of the Jubas Living Trust, Katz, as trustee of the Katz Lending 401K Plan, and Rava Capital, Inc. Rodeo Capital, Katz as trustee of the Katz Lending 401K Plan, HIF Lenders II, Inc., and Rava Capital, Inc. joined Katz and Bernstein's special motion to strike. JHM

6

the moving defendants asked the trial court to strike the allegations in paragraphs 45-47, 87, 97, 102, 119, and part of paragraph 75.  These are those allegations:

In **paragraph 45** JHM alleged the defendants' "ultimate violation of . . . trust" occurred when the Rodeo Capital Group and the Senior Investors "filed a foreclosure action seeking to extinguish [JHM's] second mortgage despite years of persuading [JHM] not to foreclose, and all the statements made to induce [JHM] to loan the $400,000 to the Illinois Borrower[s], specifically that they were all in this together and would not seek to wipe out the second mortgage."  In **paragraph 46** JHM provided information about the foreclosure action that sought to extinguish JHM's mortgage and alleged the Rodeo Capital Group and the Senior Investors secretly entered into a settlement agreement and a "deed in lieu" with the Illinois Borrowers after attempting unsuccessfully to negotiate "an intercreditor agreement" with JHM.  In **paragraph 47** JHM, after summarizing its allegations in paragraphs 45 and 46, alleged the Rodeo Capital Group and the Senior Investors' conduct was "the height of duplicity and deception."

In **paragraph 87** JHM alleged, in connection with its cause of action for concealment, it would have foreclosed on the property in 2014 or 2015 had the Rodeo Capital Group and the Senior Investors disclosed that the property taxes were in arrears and that the anchor tenant was not paying rent.  In **paragraph 97** JHM alleged, in connection with its cause of

---

alleged causes of action against other defendants who have not appeared in the action or who were involved in a Florida real estate investment unrelated to the Illinois property, none of whom is a party to this appeal.

action for promissory fraud, the Rodeo Capital Group and the Senior Investors repeatedly promised JHM "it would get paid back [its] $400,000 investment" but "did not perform the promised acts, as evidenced by" the filing of a foreclosure action that sought to extinguish JHM's mortgage. In **paragraph 102** JHM alleged, in connection with its cause of action for negligent misrepresentation, the Rodeo Capital Group and the Senior Investors "made certain representations to [JHM] to induce it to forbear from foreclosing on the Property." And in **paragraph 119** JHM alleged, in connection with its cause of action for breach of fiduciary duty, Rodeo Capital "knowingly acted against [JHM's] interests in connection with persuading [JHM] not to foreclose on the Illinois Property . . . ."

Finally, the allegation in **paragraph 75** that the moving defendants asked the trial court to strike was that, in connection with JHM's cause of action for intentional misrepresentation, the Rodeo Capital Group and the Senior Investors "made certain representations to [JHM] to induce it to forbear from foreclosing on the Illinois Property." The Rodeo Capital Group and the Senior Investors did not challenge the allegations in paragraph 75 concerning statements or omissions about the joint nature of the first and second loans (the "friendly first allegation"), the inflated appraisal, or the creditworthiness of the anchor tenant.

The moving defendants argued the allegations they were challenging in the special motion to strike sought "to impose liability . . . for commencing a legal action for judicial foreclosure and/or for pre-litigation communications, for which they are insulated from liability" under Civil Code section 47, subdivision (b). The moving defendants argued JHM's alleged

8

damages were based entirely on the harm JHM claimed it suffered "by refraining from foreclosing and by [the Rodeo Capital Group and the Senior Investors] pursuing a judicial foreclosure on the Illinois Property."  Without any analysis or substantive supporting declarations, the moving defendants argued that JHM's claims arose from protected activity under section 425.16 and that the litigation privilege under Civil Code section 47, subdivision (b), provided "complete immunity" from liability for misleading JHM "into refraining from foreclosing or from the judicial foreclosure proceedings commenced by [the Rodeo Capital Group and the Senior Investors]."

JHM opposed the special motion to strike, arguing its claims did not arise from protected activities under section 425.16.  JHM argued that its causes of action arose instead from statements and omissions Katz and Bernstein made years before the Rodeo Capital Group and the Senior Investors filed their foreclosure action and that references to the Illinois foreclosure action only provided "'context, without supporting a claim for recovery.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*).) JHM also argued the moving defendants failed to show JHM's causes of action arose from statements made in anticipation of litigation.  In their reply, the moving defendants argued that "both the act of convincing [JHM] not to foreclose and the commencement of a foreclosure proceeding are protected activities" and that section 425.16 "applies to all activities in connection with litigation."  JHM's "sole theory of damages," according to the moving defendants, "consists of the claim that defendants undermined the value of JHM's collateral by first convincing JHM not to foreclose, and then commencing a judicial foreclosure that will, if successful, eliminate JHM's lien."

The trial court granted in part and denied in part the special motion to strike. The court broadly characterized the challenged allegations as pertaining to (1) the defendants' act of filing a foreclosure action that sought to eliminate JHM's lien on the Illinois property (paragraphs 45-47 and 97); and (2) the defendants' misrepresentations and omissions that caused JHM to refrain from filing a foreclosure action in Illinois (paragraphs 75, 87, 102, and 119). The court further divided the second category of allegations (regarding forbearance) into allegations of affirmative misrepresentations (there was no need to foreclose because the defendants would ensure JHM was repaid) and those of omissions (JHM would have foreclosed when it had the chance had it known about the unpaid property taxes and the problems with the anchor tenant).

Under the first step of the section 425.16 analysis the trial court ruled JHM's allegations concerning the filing of the foreclosure action by the defendants did not arise from protected activity. The court stated that "a close reading of the Complaint indicates that [JHM's] claims do not seek relief for Defendants' filing of a foreclosure action." For example, the court pointed out, JHM's third cause of action for promissory fraud sought damages because the borrowers failed to repay the $400,000 loan, not because the defendants foreclosed on the property. "This makes sense," the court reasoned, "to the extent that the presence or absence of a lien does not fundamentally relate to the borrowers' obligation to [JHM]."

But the trial court ruled that affirmative misrepresentations that caused JHM to refrain from filing a

foreclosure action were protected statements made by a senior lender in anticipation of litigation. The court concluded that the alleged omission concerning the payment of property taxes was protected activity because Rodeo Capital had a duty as the loan servicer to disclose that information, but that the alleged omission concerning the anchor tenant was not protected activity because Rodeo Capital did not have a duty to disclose that information.

Under the second step of the section 425.16 analysis, the trial court ruled "the allegations that Defendants made certain misrepresentations and omitted the fact that property taxes had not been paid in order to preclude a foreclosure action are barred by the litigation privilege" for the same reasons that those misrepresentations and omissions constituted protected activity. JHM filed a timely appeal, and the moving defendants filed a timely cross-appeal.

## DISCUSSION

A.    *Section 425.16*

"A strategic lawsuit against public participation . . . is one which 'seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.'" (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 404; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 (*Rand Resources*) ["'participation in matters of public significance . . . should not be chilled through abuse of the judicial process'"].)  Section 425.16 "provides a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Contreras*, at p. 404; see *Rand*

11

*Resources*, at p. 619; *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1003 (*Trinity Risk Management*) ["The Legislature enacted section 425.16 to prevent and deter 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'"].) "The statute 'authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue.'" (*Contreras*, at p. 404; see *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.) And the Legislature has instructed that the statute "'be construed broadly.'" (*Rand Resources*, at p. 619; see § 425.16, subd. (a).)

A special motion to strike under section 425.16 may be used to attack entire causes of action or "parts of a count as pleaded." (*Baral*, *supra*, 1 Cal.5th at p. 393; see *Kettler v. Gould* (2018) 22 Cal.App.5th 593, 600.) The "distinctive two-part structure" applies in either circumstance. (*Rand Resources*, *supra*, 6 Cal.5th at p. 619; see *Baral*, at p. 396.) "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Baral*, at p. 396.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under [section 425.16]." (*Baral,* at p. 394; see *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 753 (*Oakland Bulk*) ["""collateral or incidental allusions to protected activity will not trigger""" application of section 425.16].) "[T]he focus is on

determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*); see *Oakland Bulk*, at p. 753.)

"If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral, supra*, 1 Cal.5th at p. 396; see *Kettler v. Gould, supra*, 22 Cal.App.5th at p. 601.)

We review de novo an order granting or denying a special motion to strike under section 425.16. (*Park, supra*, 2 Cal.5th at p. 1067; *Trinity Risk Management, supra*, 59 Cal.App.5th at p. 1002.) "'[O]ur job is to review the trial court's ruling, not its reasoning.' [Citation.]  We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]  In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the

opposing party's evidence as a matter of law." (*Trinity Risk Management*, at pp. 1002-1003; see *Park*, at p. 1067.)

      B.     *The Challenged Allegations Do Not Arise from Protected Petitioning Activity*

      1.     *Applicable Law*

Section 425.16, subdivision (e), describes four types of communications or conduct that constitute acts in furtherance of a person's right of speech or petition, including "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2); see *Rand Resources*, *supra*, 6 Cal.5th at p. 620; *Trinity Risk Management*, *supra*, 59 Cal.App.5th at p. 1003.) "'[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege,'" such "'statements are equally entitled to the benefits of section 425.16.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; see *Trinity Risk Management*, *supra*, 59 Cal.App.5th at pp. 1004-1005; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 940 (*Bel Air Internet*).) But a "prelitigation communication is privileged only if it 'relates to litigation that is contemplated in good faith and under serious consideration.'" (*Trinity Risk Management*, at p. 1005; see *Kettler v. Gould*, *supra*, 22 Cal.App.5th at p. 608.)

14

"In determining whether a statement was made in anticipation of litigation contemplated in good faith and under serious consideration, [the] court may look to how this test has been applied in cases involving the litigation privilege of Civil Code section 47." (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 790; accord, *Kettler v. Gould, supra*, 22 Cal.App.5th at pp. 607-608; *Bel Air Internet, supra*, 20 Cal.App.5th at p. 941.) In such cases, "'the "mere possibility or subjective anticipation" of litigation is insufficient'" to demonstrate litigation contemplated in good faith and under serious consideration. (*Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1095-1096; see *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 35 (*Edwards*).) Instead, there must be "'proof of "some *actual verbalization* of the danger that a given controversy may turn into a lawsuit."'" (*Strawn*, at p. 1096; see *Edwards*, at p. 35.) Courts considering whether a prelitigation statement is privileged under Civil Code section 47, subdivision (b), also consider whether litigation was imminent or contemplated at the time the statements are made. (See *Strawn*, at p. 1096; *Edwards*, at pp. 35-36; see also *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268-1269 [discussing imminency].) "'Although "[t]he classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled," it is not the mere *threat* of litigation that brings the privilege into play, but rather the actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute. [Citation.] "[B]ecause the privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed *in good faith* for

15

the purpose of resolving the dispute, even a threat to commence litigation will be insufficient to trigger application of the privilege if it is actually made as a means of inducing settlement of a claim, and not in good faith contemplation of a lawsuit.""" (*Strawn*, at p. 1096; see *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1379-1380.)

### 2. *JHM Does Not Seek Relief Based on the Illinois Foreclosure Action*

The moving defendants argue the trial court erred in denying their special motion to strike paragraphs 45-47 and 97, which they contend allege harm arising from the filing of the foreclosure action in Illinois. But the trial court correctly distinguished between ""'(1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity.""" (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594; see *Oakland Bulk, supra*, 54 Cal.App.5th at p. 753.) JHM did not sue the Rodeo Capital Group and the Senior Investors for filing a foreclosure action, which would be protected petitioning activity. JHM sued them for inducing JHM to loan the Illinois Borrowers $400,000 under the false pretense of a "friendly first," which is not protected petitioning activity, and the foreclosure action filed in Illinois is evidence the Rodeo Capital Group and the Senior Investors reneged on their promise. Indeed, JHM's causes of action and damages do not depend on whether the Rodeo Capital Group and the Senior Investors ever filed the foreclosure action; JHM would have lost its investment either way. The foreclosure action does not underlie or form the basis for the challenged allegations (see *Park, supra*, 2 Cal.5th at p. 1062; *Oakland Bulk*,

16

*supra*, 54 Cal.App.5th at p. 753), and instead only provides "context" for JHM's claims "without supporting a claim for recovery" (*Baral*, *supra*, 1 Cal.5th at p. 394; see *Oakland Bulk*, at p. 753). In other words, that the Illinois foreclosure action "may have *triggered* a lawsuit" does not mean JHM's causes of action arose from protected activity. (*Third Laguna Hills Mutual v. Joslin* (2020) 49 Cal.App.5th 366, 373; accord, *ValueRock TN Properties, LLC v. PK II Larwin Square SC LP* (2019) 36 Cal.App.5th 1037, 1047; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478 ["the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of [section 425.16]"].) Thus, the trial court did not err in denying the part of the special motion to strike targeting paragraphs 45-47 and 97 that the moving defendants contend the court erred in denying.

> 3. *The Challenged Misrepresentations and Omissions Are Not Protected Prelitigation Statements*

JHM argues the trial court erred in granting the special motion to strike the allegations of affirmative representations Katz and Bernstein made to persuade JHM not to foreclose on the Illinois property (essentially, "we'll make sure you get your money back") and omissions regarding the payment of property taxes. Conversely, the moving defendants argue the trial court erred in denying the special motion to strike the allegations of omissions concerning the anchor tenant's lease payments. We conclude the moving defendants failed to carry their burden to show any of the alleged misrepresentations or omissions were protected prelitigation statements under section 425.16, which

17

means that, on both issues, JHM is right and the moving defendants are wrong.

JHM in its complaint did not allege that it or any other person or entity ever affirmatively threatened to foreclose on the Illinois property or to file a declaratory relief action or any other litigation to determine the rights and interests of the various parties. JHM also did not allege that it ever retained an attorney to file a foreclosure action or to threaten to foreclose or that JHM ever received a communication from any attorney representing any of the defendants regarding the Illinois property. Similarly, in his declaration in opposition to the special motion to strike, Jason Mitchell, JHM's principal, stated that he "was persuaded by Katz and Bernstein not to foreclose" and that he "would have" foreclosed on the property had he known the truth about the property's value. The only indication JHM actually considered foreclosing on the property is implied from a sentence in Mitchell's declaration stating he relied on the alleged misrepresentations and omissions "in deciding not to foreclose . . . in 2015." None of the moving defendants provided a declaration in support of the special motion to strike, and none submitted any evidence other than an order granting a motion for entry of default entered by an Illinois court in the foreclosure action.

The moving defendants did not show JHM's allegations that their misrepresentations and omissions caused JHM to refrain from filing a foreclosure action, allegations we assume are true, were made in anticipation of litigation contemplated in good faith and under serious consideration. "In order for [defendants] to be able to take advantage of the [litigation] privilege by applying it to their *own* communications, they must establish

18

that at the time they made the subject communications, they *themselves* actually contemplated prospective litigation, seriously and in good faith." (*Edwards, supra*, 53 Cal.App.4th at p. 39; see *Strawn v. Morris, Polich & Purdy, LLP*, *supra*, 30 Cal.App.5th at p. 1096; *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 948; *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1380; see also *Bel Air Internet*, *supra*, 20 Cal.App.5th at p. 944 ["Whether or not a person intends to exercise his or her constitutional right to petition the government by persuading another to file [or not to file] a lawsuit depends upon the state of mind of the person offering the persuasion, not the state of mind of the person whom he or she attempts to persuade."].)

For example, in *Edwards*, *supra*, 53 Cal.App.4th 15, a case strikingly similar to this one, a homeowners' association sued a developer and its insurer for fraudulently inducing the homeowners to release the developer from liability in exchange for making repairs to cracks in the foundations of the plaintiffs' homes. (*Id.* at pp. 25-27.) The defendants filed a motion in limine to exclude under Civil Code section 47, subdivision (b), the defendants' prelitigation communications as evidence they had fraudulently induced the homeowners to execute the releases. (*Edwards*, at pp. 25-26.) The court in *Edwards* reversed an order granting the motion in limine. The court stated: "[The homeowners] merely alleged that [the defendants] intended, by means of fraudulent misrepresentations and omissions, to protect themselves from *potential* liability by inducing [the homeowners] not to pursue their rightful judicial remedies. [The homeowners] have never alleged or admitted that at the time they informed [the developer] of the cracks in their foundations, [the

19

homeowners] themselves were actually contemplating litigation, seriously and in good faith. . . . [¶] . . . The allegations of [the] complaints only state that [the defendants] were trying to *avoid* potential litigation by acting in a way that would induce [the homeowners] not to pursue or even consider filing lawsuits until the statute of limitations had already run. Nowhere in their complaints do [the homeowners] allege [the defendants] contemplated anything more than the mere *possibility* that [the homeowners] might consider litigation." (*Id*. at p. 39; see *Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 948 [defendant "identified no evidence that the allegedly defamatory statements were made when [the defendant] contemplated litigation in good faith"]; *Eisenberg v. Alameda Newspapers, Inc.*, *supra*, 74 Cal.App.4th at p. 1380 [litigation privilege did not protect as a prelitigation statement a retraction that was published "not to obtain access to the courts, but to *avoid* litigation"].) Here, as with the defendants in *Edwards*, the moving defendants pointed to no evidence that, at the time they made the alleged misrepresentations and omissions, they actually contemplated litigation in good faith and under serious consideration.

The court in *Edwards* further stated that "the [litigation] privilege only arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute." (*Edwards*, *supra*, 53 Cal.App.4th at p. 39.) This requirement prevents the litigation privilege from being used "'as a cloak to provide immunity' for fraud and other tortious conduct." (*Id.* at p. 33;

20

accord, *Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 947; see *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 357 ["a threat to file a lawsuit is insufficient to activate the privilege if it is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court"].) Here, JHM did not even allege there was a dispute with the Rodeo Capital Group or the Senior Investors at the time Katz and Bernstein made misrepresentations and omissions to induce JHM not to foreclose on the Illinois property. Instead, JHM alleged it believed JHM, the Rodeo Capital Group, and the Senior Investors "were all in this together." The moving defendants failed to show litigation was anything more than a "mere possibility," if that. (*Edwards*, at p. 39; see *id.* at p. 38 ["it is not clear from the record that there was even a 'dispute' to be resolved before [the defendants] demanded that [the homeowners] execute the releases as a condition of repairing the foundations"].)

Finally, the policy underlying the litigation privilege is not served by applying section 425.16 to the misrepresentations and omissions at issue in this case. "'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241; accord, *Trinity Risk Management*, *supra*, 59 Cal.App.5th at p. 1006.) This purpose is not served by protecting "[n]egotiations and persuasion [that] are part of any business deal." (*Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, 320; see *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 703-704 [letter communicating a decision to terminate a contract was not

21

protected pre-arbitration activity because the sender "had 'no reason to believe' that arbitration 'will follow' from its letter because [the parties] could well have negotiated a settlement and obviated any need for arbitration"].) "To suggest that nearly *any* attempt at negotiation is covered by the privilege . . . is unduly overbroad." (*Haneline*, at p. 320; see *Eisenberg v. Alameda Newspapers, Inc.*, *supra*, 74 Cal.App.4th at p. 1381 [applying the litigation privilege to settlement negotiations when litigation is a mere possibility "is totally unrelated to the rationale underlying the litigation privilege"].) Katz and Bernstein hoped to forestall any effort by JHM to foreclose on the Illinois property by persuading JHM it would get its money back and by withholding material information about the property. There was no allegation or evidence that Katz or Bernstein contemplated any litigation (much less seriously or in good faith) at the time they made the challenged misrepresentations and omissions. Thus, JHM's causes of action arising from those alleged misrepresentations and omissions did not restrict any party's freedom of access to the courts. Thus, the trial court erred in granting the part of the special motion to strike JHM contends the court erred in granting, and it did not err in denying the part of the motion to strike allegations regarding the omission of information regarding the anchor tenant.

## DISPOSITION

The order granting in part and denying in part the special motion to strike certain allegations of the complaint is reversed. The trial court is directed to enter a new order denying the special motion to strike.  JHM is to recover its costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.